WILLIAM T. BAIRD, individually and as trustee, &c., complainant-respondent,

*v.*

BOARD OF RECREATION COMMISSIONERS OF THE VILLAGE OF SOUTH ORANGE et al., defendants-appellants.

[Argued February 4th, 1932. Decided May 16th, 1932.]

*Mr. Thomas E. Fitzsimmons,* for the appellants.

*Mr. Auguste Roche, Jr.,* for the respondent.

The opinion of the court was delivered by

CAMPBELL, J.

This is an appeal from an injunctive order of March 25th, 1931, restraining the village of South Orange, its board of recreation commissioners and the South Orange baseball club from holding professional or semi-profesional baseball games,

with an admission charge, on Sundays, or any other days, upon lands obtained by the village from the Meadowland Society and also from so using such lands "in such a manner as to annoy and disturb the rest of complainant and his family and to interrupt and destroy their peace, quiet and enjoyment on Sundays or any other days, by playing or permitting said professional or semi-professional baseball games to be played on Sundays or any other days."

From the opinion of the vice-chancellor, who heard the matter, it is somewhat difficult and confusing to reach a conclusion upon exactly what grounds, factual and legal, he advised the decree under review.

There seems to have been originally three findings:

1. That there was established a public nuisance amounting to a special nuisance to the complainant, because the vice-chancellor says: "I have no difficulty in believing that the peace, rest, and quiet of the complainant and his supporting witnesses, and that of the public, on Sunday afternoons, were thus disturbed."

2. "That the playing of games on this property on Sunday is unlawful and a violation of the covenant in the deed of conveyance."

3. That "it is clear * * * that the restriction contained in the deed of conveyance * * * limits the use of the land * * * to the enjoyment of the public at large and does not contemplate or permit the segregation of any part of it for games at which portions of the public are admitted on payment of admission fees."

The learned vice-chancellor, however, sums up his reasonings as follows:

"My conclusion is that the deed from the Meadowland Society to the village of South Orange restricts the use of the land to public park and playground purposes; that the meaning of the restriction is that the land shall be used by the general public and that no part of it shall be segregated and used for games to which admission is charged on any day of the week."

If, by this final expression, the vice-chancellor intends to

express his judgment that his previously expressed conclusions, before referred to, are not supported by fact or law, we have no difficulty in reaching the same conclusion, because we do not find the proofs sufficient to support a finding of a special nuisance, suffered by the complainant, warranting relief by injunction, nor do we find the authorities support the right of the court of chancery to restrain acts which are violations of the criminal law. Upon the question of enjoining a nuisance at the suit of an individual the rule is that it will not be enjoined unless the individual suffers some private, direct and material damage beyond the public at large, as well as damage otherwise irreparable. *Morris and Essex Railroad Co.* v. *Prudden, 20 N. J. Eq. 530.*

We find nothing in the proofs that brings the present case within this rule.

As to the question of the jurisdiction of the court of equity to restrain violations of ordinances or crimes there can be no question as to the total lack thereof. *Green* v. *Piper, 80 N. J. Eq. 288,* and cases there cited; *Ventnor City* v. *Fulmer, 92 N. J. Eq. 478,* and cases therein cited, and *Srager* v. *Mintz, 109 N. J. Eq. 544.*

This leaves remaining only the third, and as before suggested, probably the only ground upon which the decree in question was advised, that the use of said lands for professional or semi-professional baseball games from which the public at large or, some part of it, was excluded because of the requirement that an admission fee be paid violated the restrictive covenant in the deed of the village of South Orange.

But this is, indubitably, not so.

The covenant is, "the four tracts above described are con veyed upon condition and subject to the restriction that the premises above described shall be used solely for public park and playground purposes."

The deed for the lands in question bears date March 28th, 1924, and was recorded April 16th, 1924.

Assuredly, what were "public park and playground purposes" contemplated by this restrictive covenant, must be construed and determined by the definition thereof and char-

acter of use contained in legislation existing at the time the covenant was entered into.

There was, at that time, in existence, and still is, the act entitled "An act concerning municipalities." *P. L. 1917 ch. 152 p. 319.* Section 11, article 36 of this act authorizes and empowers the body in charge of playgrounds and recreation places to arrange and provide for the giving therein of outdoor exhibitions, concerts, games and contests and to charge and collect reasonable admission fees from each person, except children under twelve years of age, entering such playground or recreation place during the time the same is being used for such purposes, such use being limited to not more than eight hours in any week and to no more than two days a week.

Prior to this there was the statute entitled "An act concerning playgrounds and recreation places in this state and providing for the establishment, equipment, maintenance, control, use and regulation thereof." *P. L. 1911 ch. 308 p. 666.* Section 7 of this act is practically the same and its language is nearly *verbatim* with that employed in section 11, article 36, of the Municipalities act, *supra.*

In *Strock* v. *Mayor, &c., of East Orange, 80 N. J. Law 619,* the supreme court, in construing a similar statute (*P. L. 1909 p. 76*), held, that "the use of public playgrounds for outdoor exhibitions and contests for a limited time under the direction of the playground commissioners is not inconsistent with the purposes for which such playgrounds were authorized by the legislature and acquired by the municipality."

Considering this conclusion to be sound, we approve and adopt it.

There was therefore no violation of the covenant.

The decree under review is therefore reversed.

*For affirmance*—WELLS, J.   1.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, KERNEY, JJ.   13.