HARRY L. FRANCISCO and MARY ADELIA FRANCISCO, complainants,

*v.*

DEPARTMENT OF INSTITUTIONS AND AGENCIES, WILLIAM J. ELLIS, commissioner of institutions and agencies, and MARGARET ECK, defendants.

[Decided September 23d, 1935.]

*Messrs. McCarter & English,* for the complainants.

*Mr. John A. Matthews,* for the defendant Margaret Eck.

EGAN, V. C.

The defendant Margaret Eck has conducted a private nursing home, hospital and sanitarium for profit, at No. 117 South Fullerton avenue, Montclair, New Jersey, for more than fifteen years. In or about October, 1932, the complainants acquired the title to the adjoining premises, at No. 115 South Fullerton avenue, Montclair, New Jersey, which they

have since occupied. They seek to enjoin the defendant from conducting her business on the described premises for the reasons that:

"1. It is a nuisance to them because certain noxious, annoying and deleterious gases and offensive and ill-smelling odors enter into and permeate their home causing them harm, annoyance and great discomfiture.

"2. It is being operated in violation of the laws of the State of New Jersey, which provide a penalty and punishment for such illegal and unlawful operation in the sum of $500 or imprisonment for six months or both.

"3. It is being operated contrary to a zoning ordinance of the township of Montclair passed and adopted May 17th, 1934.

"4. It is being operated in violation of the rules and regulations of the department of institutions and agencies.

"5. That by reason of the use of said premises as a private nursing home, &c., their property has greatly depreciated in value and will continue to so depreciate."

The bill also prays that the defendants, department of institutions and agencies, and William J. Ellis, commissioner of institutions and agencies, be enjoined and restrained from issuing and granting a license to the defendant Margaret Eck for the maintenance of a hospital on her premises. It was stipulated in the record that the department of institutions and agencies, and Commissioner Ellis, would file no answer and present no appearance at the final hearing, and that they will abide by the result of the suit against the defendant Margaret Eck.

Complainants say they were not aware of the nature of the business conducted by the defendant on the premises No. 117 South Fullerton avenue at the time they acquired their title to No. 115 South Fullerton avenue. They contend that the defendant's use of the premises is injuriously offensive to them and constitutes a common law private nuisance; they declare that from the sanitarium emanate:

"1. The smell and odor of anesthesia, or ether, and also a general hospital odor.

"2. The excessive odors of laundering and cooking.

"3. The disturbing noises—such as moans, groans and cries."

At this point, it is in order to observe a few of the principles expressed in several of the decisions of the courts of this state which apply to the facts adduced at the hearing of this suit. Vice-Chancellor Pitney, in *Hennessey* v. *Carmony, 50 N. J. Eq. 616; 25 Atl. Rep. 374*, stated:

"Upon reason and authority I think there is a clear distinction between that class of nuisances which affect air and light merely, by way of noises and disagreeable gases, and obstruction of light, and those which directly affect the land itself, or structures upon it. Light and air are elements which mankind enjoy in common, and no one person can have an exclusive right in any particular portions of either, and as men are social beings, and by common consent congregate and need fires to make them comfortable and cook their food, it follows that we cannot expect to be able to breathe air entirely free from contamination, or that our ears shall not be invaded by unwelcome sounds. Thus, my neighbor may breathe upon my land from his, and the smoke from his house fire and the vapor from his kitchen may come on to my land, or he may converse in audible tones while standing near the dividing line, and all without giving me any right to complain. So my neighbor and I may build our houses on the line between our properties, or have a party wall in common, so that we are each liable to hear and be more or less disturbed by the noise of each other's family, and cannot complain of it. In all these matters of the use of the common element—air—we give and take something of injury and annoyance, and it is not easy to draw the line between reasonable and unreasonable use in such cases, affecting, as they do, mainly the comfort and in a small degree the health of mankind. In attempting to draw this line we must take into consideration the character which has been impressed upon the neighborhood by what may be called the common consent of its inhabitants."

In *Demarest* v. *Hardham, 34 N. J. Eq. 469*, Vice-Chancellor Van Fleet said:

"No rule can be framed which will accurately define what

acts or facts will constitute a nuisance in every possible contingency. Each case must be decided on its own peculiar facts. There can be no doubt that a lawful business, which is not inherently a nuisance on account of its offensive character, may be so conducted as to render it a nuisance which equity will restrain. The maxim *sic utere tuo ut alienum non laedas,* undoubtedly expresses the general fundamental rule, but it is also true that the law does not regard every trifling injury or annoyance as an actionable nuisance. Things merely disagreeable, which simply displease the eye, or offend the taste, or shock an over-sensitive or fastidious nature, no matter how irritating or unpleasant, are not nuisances." * * * "Perhaps the most accurate statement of the rules to be observed in deciding the question whether a business is so conducted as to render it a nuisance or not, is that given by Mr. Justice Mellor in charging a jury at the Liverpool assizes in 1865. He said: 'Every man is bound to use his own property in such a manner as not to injure the property of his neighbor. * * * But the law does not regard trifling inconveniences; everything must be looked at from a reasonable point of view; and therefore, in an action for nuisance to property, * * * the injury, to be actionable, must be such as visibly to diminish the value of the property, and the comfort and enjoyment of it. In determining whether a nuisance exists or not, the time, locality and all the circumstances should be taken into consideration. In counties where great works have been erected and carried on, which are the means of developing the national wealth, persons must not stand on extreme rights and bring actions in respect of every matter of annoyance, for if they do, business cannot be carried on in these places."

Chancellor Zabriskie, in *Ross* v. *Butler, 19 N. J. Eq. 294,* said:

"But the question remains, what degree or amount of discomfort is necessary to constitute a nuisance. It is clear that everything that renders the air a little less pure, or is to any extent disagreeable, is not necessarily a nuisance. The smoke that may, in certain conditions of the atmosphere, descend from the neighbor's chimney, the fumes that may sometimes

be wafted from his kitchen, though not desirable or agreeable, are not a nuisance."

The complainant Harry L. Francisco testified that he smelled the odor of ether which came from the premises of the defendant some thirty or forty times "since I have lived there." The odor was a pungent nauseating odor. As to the noises, moans and groans, Francisco's testimony shows (page 48 testimony) :

"*Q.* * * * Did you hear noises and groans and moans emanating from that house and found that those noises and groans and moans were discomfiting and disquieting to you and upset your peace of mind? *A.* I will say at least a half a dozen times. * * *"

The wife of this witness, Mary Adelia Francisco, testified that from October, 1932, "to the present time" she smelled the anesthetic. When asked how many times, she stated (page 48 of testimony) :

"*A.* Well, I would say it might have been two dozen times."

A witness for the complainant, Mrs. Riker, who lives opposite the complainants, at No. 116 South Fullerton avenue, Montclair, testified (pages 53 and 54 testimony) :

"*A.* I haven't noticed anything wrong or objectionable, only there have been patients coming in there and it has been run as a hospital."

She further related (pages 59 and 60 testimony) :

"*Q.* And after you went to bed at night you could hear the screams from these premises? *A.* Yes, *Q.* And how many times would you say you heard those things during the period from October, 1932, down to date? *A.* I couldn't tell you. *Q.* Would you make it also thirty or forty times? *A.* Yes."

Mrs. Francisco, testifying as to the noises (page 46 testimony), said:

"*Q.* I want to know approximately how many you have heard during the summer of 1933 of the twelve or fifteen that you have heard from October, 1932, down to the present date? *A.* Well, I said twelve or fifteen."

Mrs. Riker, who lives on the opposite side of the street from the defendant—approximately ninety feet—testified that

she heard noises emanating from the Eck building some thirty or forty times; while the complainant Mary Adelia Francisco, living in the house on the adjoining premises—approximately twenty feet from the defendant's building—heard noises "twelve or fifteen times."

Mrs. Stenz, a neighbor for some fifteen years, residing at No. 119 South Fullerton avenue, Montclair, adjoining the Eck premises, called by the defendant, stated as follows (pages 84 and 85 testimony):

"*Q.* During this period of time, Mrs. Stenz, did you ever smell any offensive odors or any anesthetics or hospital smells? *A.* None whatever. *Q.* During this period of time, Mrs. Stenz, were you ever annoyed or discomfited by groans and shrieks? *A.* Never a sound. *Q.* Or by any loud noises? *A.* Never."

Testimony to the same effect was given by other witnesses produced by the defendant—by Marie Thomas, her cook; by Veronica McDonald, her nurse; by Elizabeth Witscher, and by Dr. Bush.

The complainants allege excessive odors of laundering and cooking; no evidence of odors from laundering appears in the record. The number of patients in the sanitarium, at one time, was small. Mrs. Eck testified that since October, 1932, she had in the hospital—"one time there was an emergency arose and I had five. Usually I have four."

Francisco and his wife complained about the odor from cooking. Francisco, in answer to a question on cross-examination, said: "It is not pleasant." He further testified:

"*Q.* It is approximately the same kind of a smell which you smell in your own kitchen, is it not, Mr. Francisco. *A.* Yes. *Q.* So there was nothing particularly disagreeable or discomfiting about the cooking odor. *A.* Not agreeable or comforting. *Q.* It was not more disagreeable or discomfiting than your own kitchen? *A.* I should say not."

On direct examination, Mrs. Francisco was asked this question:

"*Q.* Would you say the cooking was more than for an ordinary family? *A.* Why, certainly I would say so. I would not be able to prove that because I have never been in the

house, but there is no question it could be proved. She has been running that nursing home for fifteen years and there are people in that home all the time. They must eat."

The last quoted testimony has no evidential value. I think the testimony of Francisco, as last quoted, comes under the principle expressed in *Ross* v. *Butler, supra*. I do not apprehend that the odors from the cooking in the sanitarium were any greater, or more offensive, than that which is incidental to the home of the average American family.

The testimony as to the noises, moans, groans and cries seems to be limited to but a few occasions; they were by no means general. The operations upon patients in the sanitarium were few and far between. Francisco testified on those disturbances as follows (pages 28 and 29 testimony) :

"*Q.* That is what I want approximately. Probably we can arrive at it easier by asking you approximately how many times from November, 1932, to say May of 1934, did you hear noises and groans and moans emanating from that house and found that those noises and groans and moans were discomfiting and disquieting to you and upset your peace of mind? *A.* I will say at least a half a dozen times. * * *."

These last mentioned noises, amounting to six, happened in a period extending over eighteen months. I do not believe those infrequent, and separated, occasions could, or would seriously affect the peace and quiet of the complainants. Mrs. Francisco testified as follows (page 47 testimony) :

"*Q.* You cannot then estimate the approximate number of times that you were annoyed and discomfited by the screams and moans in the past ten months except you say there were about two, is that right? *A.* I said I recall at least two. There were probably more, but I couldn't say how many. There haven't been so many during the time you are asking me about."

The defendant denies that the premises as operated and conducted by her constituted a public nuisance; and she denies that it was in violation of the zoning ordinance of the township of Montclair, or the laws of the State of New Jersey, as expressed in chapter 115, laws of 1927. She stated that she applied for a renewal of her license on February 1st,

1934, and had sent her check to cover the fee therefor on May 2d, 1934; that the representative of the department of institutions and agencies then told her no license would be issued to her, but that she could conduct her business without one since it was not the department's policy to issue a license when litigation concerning the subject-matter was pending. She argued that by reason of the attitude of the department of institutions and agencies that she was, therefore, legally operating; and that being so, she is not affected by the provisions of the Zoning act (laws of 1928, chapter 274).

The defendant, in support of her right to continue her business which was in existence before the adoption of the Zoning act, cites the case of *Frank J. Durkin Lumber Co.* v. *Fitzsimmons, 106 N. J. Law 183; 147 Atl. Rep. 555,* in which Mr. Justice Case, speaking for the court of errors and appeals, in part, said:

"On October 18th, 1927, the people, at a special election, adopted a constitutional amendment providing that—'the legislature may enact general laws under which municipalities, other than counties may adopt zoning ordinances * * *.' By its terms this constitutional provision was to become effective, within its scope, only if, when, and as the legislature should enact. The anticipated statute was passed and approved April 3d, 1928, as chapter 274 of the laws of that year. The alleged ordinance violations occurred in the early part of March, 1928, and were, therefore, at the time of their occurrence, not unlawful. Did the 1928 statute, by retrospective application, make them unlawful? It is to be borne in mind, without accentuating the penal character of the proceeding under review (*Marter* v. *Repp, 80 N. J. Law 530; affirmed, 82 N. J. Law 531*), that it is 'a familiar and important principle, always to be kept in mind in the construction of statutes, that they are not to be given a retrospective effect or operation if their language reasonably admits of another construction.' *Frelinghuysen* v. *Morristown, 77 N. J. Law 493.* It is also to be remembered that the use of property is one of the essential attributes of ownership. Ownership without use is fatuous. True, every owner holds his property subject to the implied condition that it

will not be used for the injury of others and also subject to a degree of municipal control in the interest of the common good. But if use is an attribute of property, may a municipality, without making compensation, estop an owner from continuing a use that is an actuality, that was begun and continued lawfully, and that becomes unlawful only because the municipality has so ordained? With respect to the construction of buildings the rule established in *Rohrs* v. *Zabriskie, 102 Id. 473,* and approved in *Koplin* v. *South Orange, 6 N. J. Mis. R. 489,* that a writ of *mandamus* being discretionary, there can be no vested rights that control the exercise of that discretion, unless a permit is issued and work is actually commenced thereunder. Recognizing that the granting of a permit and the subsequent beginning of work thereunder do clothe the owner with certain rights against municipal interference this court very recently, in two instances, refused a municipality the privilege of revoking a permit theretofore given. *Saline Freeman* v. *Frank Hague et al.; Lehigh Valley Railroad Co.* v. *Mayor and Aldermen of Jersey City et al.* It seems that a logical application of the same principle is to recognize the right to continue, as against subsequent zoning interference, a use that was actually instituted, that was lawful when instituted and that has been actively and constantly maintained. We consider that the statute does precisely that."

The complainants say that the defendant violated the zoning ordinance, and in addition, they claim they were specially injured. I am in accord with the reasoning of the defendant that the zoning ordinance does not and should not apply to her. She was in business, at her present location, long before the ordinance was adopted and its provisions, therefore, could not attach to her existing business. *Frank J. Durkin Lumber Co.* v. *Fitzsimmons, supra.* The complainants' asserted special injury is an alleged diminution in the value of their premises. The evidence to this effect is the production of the record of a reduction in the assessment of their property by the tax board. The complainants say that when their petition to the tax board for a reduction of their taxes was being heard, the contiguity of the defendant's business affect-

ing the value of their realty was considered. The act of the tax board is of doubtful evidential value in these proceedings. The complainants state the proximity of the defendant's business to their property resulted in a reduction of their assessment. The defendant very properly questions the competency of such evidence, and points to the decisions rendered in *Ringwood Co.* v. *North Jersey District Water Supply Commission, 105 N. J. Law 165; 143 Atl. Rep. 369; Ross* v. *Commissioners, Palisades Interstate Park, 90 N. J. Law 461; 101 Atl. Rep. 60.* These cases consider, among other things, that damage to realty may be shown by primary evidence, or by expert testimony of realtors.

In the case of *Zabriskie* v. *The Jersey City and Bergen Railroad Co., 13 N. J. Eq. 314,* Chancellor H. Greene, in part, said:

"A mere diminution of the value of property by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief."

In *Morris and Essex Railroad Co.* v. *Prudden, 20 N. J. Eq. 530* (at *p. 537*), Mr. Justice Depue makes this observation:

"In cases of unquestioned public nuisance, a court of equity will not interfere by injunction, except in cases of special and serious injury to the complainant, distinct from that suffered by the public at large. There must not only be a violation of the plaintiff's rights, but such a violation as will be attended with substantial and serious damage. *Bigelow* v. *Hartford Bridge Co., 14 Conn. 565.* No remedy exists in these cases, by an individual, unless he has suffered some private, direct, and material damage beyond the public at large, as well as damage otherwise irreparable. *Irwin* v. *Dixon, 9 How. 27.* Mere diminution of the value of the property of the party complaining, by the nuisance, without irreparable mischief, will not furnish any foundation for equitable relief. *Zabriskie* v. *The Jersey City and Bergen Railroad Co., 2 Beas. 314." Van Wagenen* v. *Cooney, 45 N. J. Eq. 24; 16 Atl. Rep. 689; Van Horne* v. *Newark Passenger Railway Co., 48 N. J. Eq. 332; 21 Atl. Rep. 1034; Perkins* v. *Moorestown and Camden Turnpike, 48 N. J. Eq. 499; 22 Atl. Rep. 180; Middlesex*

*Transportation Co.* v. *Pennsylvania Railroad Co., 82 N. J. Eq. 550; 89 Atl. Rep. 45.*

In *Morrison* v. *Standard Oil Company of New Jersey, 105 N. J. Eq. 104; 147 Atl. Rep. 161,* appears the following:

"There is an allegation in the bill to the effect that the completion of the defendant's plan will diminish the value of her property. That is no ground for an injunction. *Zabriskie* v. *Jersey City and Bergen Railroad Co., 13 N. J. Eq. 314; Morris and Essex Railroad Co.* v. *Prudden, supra; Halsey* v. *Rapid Transit Street Railway Co., 47 N. J. Eq. 380; Northfield* v. *Atlantic County, 85 N. J. Eq. 47.*"

I have very grave doubts about the merits of the complainants' suit. I believe there were infrequent occasions when the odor of anasthesia, and of cooking, emanated from the defendant's premises; and at times there were, moans and groans from patients in the sanitarium; but I am not inclined to the belief that the odors and noises complained of caused substantial, serious and irreparable damage to the complainants. *Van Wagenen* v. *Cooney, 45 N. J. Eq. 24; 16 Atl. Rep. 689.* The testimony presented in behalf of the complainants is fairly met by the contrary evidence offered by the defendant. Thus, a doubt is cast upon the complainants' right to succeed in their application for relief. The words of care and caution so admirably expressed by Chief-Justice Beasley in *Citizens Coach Co.* v. *Camden Horse Railroad Co., 29 N. J. Eq. 302,* may be here repeated:

" 'There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion. and which is more dangerous in a doubtful case, than the issuing of an injunction. It is the strong arm of equity that never ought to be extended unless in *cases of great injury,* where the courts of law cannot afford an adequate or commensurate remedy in damages.' "

The defendant established her nursing home approximately fifteen years before the complainants entered her neighborhood. It is a lawful business. "It is not necessarily inherently noxious. offensive or injurious." She maintained it, evidently without complaint or hindrance until June, 1934, when the bill herein was filed. To grant the prayer of the

bill, would be tantamount to destroying her business and affect her means of livelihood. Equity will avoid effecting such a result unless forced to do so by clear and convincing evidence and compelling circumstances. None of these elements are present in the complainants' case. Vice-Chancellor Van Fleet, in *Demarest* v. *Hardham, 34 N. J. Eq. 469,* expressed that rule when he said:

"The important question presented by this case is, does the manner in which the defendant conducts his business interfere with or injure the business of the complainants to such an extent as to create a nuisance which it is the duty of a court of equity to enjoin? The defendant's business is not only lawful, but necessary. It is carried on in a part of the city of Newark devoted almost exclusively to manufacturing and business purposes. No objection can therefore be made to it on the ground that its location is not a fit one. It is not necessarily or inherently noxious, offensive or injurious. It should not, therefore, be enjoined except under a stern necessity. The complainants ask that it be absolutely interdicted, their prayer being that the defendant be restrained from further operating his engine and presses. To grant their prayer is to destroy the defendant's business. Power attended with such disastrous consequences should always be exercised sparingly, and with the utmost caution. All doubts should be resolved against its exercise. *Attorney-General* v. *Nichol, 16 Ves. 338.* Relief by injunction in such cases, is not a matter of right, but rests in discretion. If the legal right is not clear, or the injury is doubtful, eventual or contingent, equity will give no aid. *Richard's App., 57 Pa. St. 105; Rhodes* v. *Dunbar, Ibid. 274; Huckenstine's App., 70 Pa. St. 102."*

The same principle is set forth in the language of Mr. Justice Depue in *Morris and Essex Railroad Co.* v. *Prudden, supra,* where he said:

"It must be a strong and mischievous case of pressing necessity, or the right must have been previously established at law, to entitle the party to call in aid the jurisdiction of a court of equity. * * *

"An injunction ought not to be granted where the benefit secured by it to one party is but of little importance, while it will operate oppressively and to the great annoyance and injury of the other party, unless the wrong complained of is so wanton and unprovoked in its character as properly to deprive the wrongdoer of the benefit of any consideration as to its injurious consequences."

To issue a restraint against the defendant, upon the evidence adduced, would be to impose upon her a severe and unwarranted penalty. I shall advise a decree dismissing the bill of complaint.