39 N.J. Super. 147 (1956)
120 A.2d 625
J. ALBERT PRIORY AND MYRTA C. PRIORY, PLAINTIFFS-RESPONDENTS,
v.
BOROUGH OF MANASQUAN, A MUNICIPAL CORPORATION OF THE COUNTY OF MONMOUTH, AND ALBERT HOLLOWAY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1956.
Decided February 21, 1956.
*151 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Robert V. Carton argued the cause for appellants (Messrs. Durand, Ivins & Carton, attorneys).
Mr. Ward Kremer argued the cause for respondents.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal from a judgment in the Chancery Division enjoining defendants, the Borough of Manasquan and Albert Holloway, a builder-contractor, from constructing a comfort station at the easterly end of Brielle Road where it adjoins the boardwalk. The prohibition applies to an area referred to in the judgment as the "dedicated beachfront" which lies between the boardwalk (running north and south) and the boundary of the monumented beachfront line 22.25 feet to the west, and the lines of Brielle Road (running east and west) as extended easterly to the boardwalk. The trial court found that this area had been abandoned by the borough to the public for use as a street, and that the borough had acquiesced in such use for a period of more than 20 years.
In September 1914 the Seacoast Real Estate Company conveyed to the borough a strip of land along the beachfront about one mile long, bounded generally by the shoreline of the Atlantic Ocean on the east, the monumented beachfront line on the west, Ocean Avenue on the north, and Manasquan Inlet on the south. The deed specifically provided that the lands were dedicated "for public purposes and for a place of resort for public health and recreation, subject to the restriction that said strip of land shall never be used for business *152 purposes, and that no structures shall ever be erected thereon, except a boardwalk and open summer houses or pavilions, with the privilege, however, of erecting piers only at the ends of and in front of streets extending back from the ocean." The borough accepted the deed of dedication a month later.
In 1928 the borough constructed a 16-foot-wide boardwalk within the boundaries of the dedicated strip, the western line of the boardwalk at Brielle Road being, as noted, 22.25 feet from and parallel to the westerly line of the dedicated beachfront. At the same time the municipality widened and gravelled Brielle Road, installed curbs on both sides and a sidewalk on the north side, and built wooden ramps connecting the sidewalk from a point at or near the monumented western beachfront line to the boardwalk proper. It subsequently erected three wooden comfort stations on the beachfront, one at the south end of Manasquan Inlet, another at the foot of Ocean Avenue to the north, and the third approximately half-way between these two on the east side of the boardwalk opposite Brielle Road.
There was testimony that the latter comfort station had been battered and damaged by tides and storms over the years and been costly to maintain, the borough having in three years spent more than $2,000 for repairs. For these reasons, and in view of the present poor condition of the comfort station, the governing body decided it was necessary to erect a modern comfort station on the west side of the boardwalk, opposite the present structure and on the dedicated beachfront, where it would have greater protection from the sea and storms. The proposed new comfort station would be of cinder block with brick veneer, modern in all details, and with entrances facing toward the ocean. On March 15, 1954 the governing body adopted an ordinance authorizing this improvement and the issuance of bonds and bond anticipation notes to finance its cost. The ordinance was duly advertised; thereafter the construction contract was awarded to defendant Holloway on April 12, 1954.
Plaintiffs are the owners of a strip of land fronting on the north side of Brielle Road between the westerly line of the *153 dedicated beachfront and First Avenue to the west, having acquired the premises in 1940. There are two dwellings on the property  one near First Avenue with two apartments which plaintiffs rent out for the summer season, and another on the ocean end with one apartment, also rented out, the remainder of the dwelling being used by the Priorys as their home. Mrs. Priory has lived in this house since 1920. The corner of the Priory porch is 40 to 50 feet from the nearest (northwest) corner of the proposed comfort station.
Plaintiffs initially instituted an action in lieu of prerogative writ, but this was dismissed without prejudice in order to permit them to seek the remedy they now invoke. The present injunction proceedings were instituted by a complaint and order to show cause with restraint on June 29, 1954. The complaint alleged that the proposed comfort station was in direct violation of the restriction contained in the deed of dedication which limited structures that might be erected on the lands conveyed to a boardwalk, open summer houses or pavilions, and piers at street ends; that defendants were about to construct the comfort station in a portion of Brielle Road which had been dedicated to public use for over 20 years last past and which was now a public street, so that the construction was in violation of plaintiffs' rights as taxpayers and owners of abutting property; that the comfort station would be attended by noxious and unpleasant odors and by noise which would constitute a nuisance; and that if the construction were allowed to proceed plaintiffs would suffer serious permanent and irreparable injury.
Defendants moved to dismiss the complaint because the action was brought beyond the time permitted under R.R. 4:88-15(b)(4) and (11), and R.S. 40:1-19, and because the complaint failed to state a claim upon which relief could be granted. The motion was denied and the restraint continued pendente lite, the court observing that although it might "doubt that plaintiffs have a good cause of action," the facts were in dispute and the parties entitled to a full hearing, so that it was necessary to maintain the subject of *154 litigation in statu quo pending final hearing. Defendants then answered, denying the essential allegations of the complaint and again raising by way of separate defenses the same matters as were raised on the motion to dismiss the complaint. Defendants' position in the Chancery Division, as fixed by the pretrial order, was that the comfort station was not to be built on a street but rather within the boundaries of the dedicated beachfront; that the structure did not fall within the restrictions contained in the deed of dedication; that the erection of a comfort station was a proper and necessary exercise of municipal police power; that plaintiffs had no status to bring this injunction action; and that their suit was untimely in view of R.R. 4:88-15(b)(4) and (11) and R.S. 40:1-19.
Plaintiffs and other witnesses testified that Brielle Road has at least since 1928 run all the way to the boardwalk proper, and that the entire stretch of this street, from First Avenue to the boardwalk, has been used by automobiles and other vehicles, as well as by the public for ingress to and egress from the beach, for well over 20 years. Plaintiffs also claim  they alone testified to this  that the use of the present comfort station has been attended by noises, odors and unclean conditions. The testimony in this respect is somewhat less than satisfactory. Mrs. Priory, for example, first stated generally that the comfort station was not too carefully policed, people changed their clothes inside, and teenagers gathered there late at night causing disturbances and breakage. She then went on to say that the police had to be called two or three times in 1953; conditions in the summer of 1954 were "quieter"; she had noticed unpleasant odors once or twice during recent seasons, and young people had strewn toilet paper about the place two or three times. Mr. Priory told of young people parking with their car radios turned on; that there was noise in the late hours on weekends, although in the summer of 1954 conditions were a little better; that young folks broke the toilets, and that in 1953 he noticed odors. Neither plaintiff ever wrote to or appeared before the governing body to complain.
*155 Defendants' proofs were that Brielle Road and its curbs and sidewalks ran to the monumented westerly beachfront line until 1939. The street surface was changed from gravel to hardtop in 1937, the new surface running to the mentioned line where there was a 12" wooden plank barrier or retaining wall which was meant to keep the sand from coming over on the road. Following the hurricane of 1938 the street department repaired the road, hardtopping it as far as the boardwalk itself. A councilman and member of the Beach and Public Grounds Committee testified that there were no complaints about the use of the comfort station at night, although there had been a few complaints in past years about people using the place for disrobing. A matron is now employed to attend the women's section and a beach inspector checks the men's side. The station is locked at night and opened at 7 A.M. More than 10,000 people visit the Manasquan Beach on a Sunday in summer, the next biggest day being Saturday.
The trial court found as a fact that the borough had abandoned the beachfront use of the area at the end of Brielle Road between the boardwalk and the westerly line of the dedicated beachfront, and that it had been in public use as a highway for upwards of 20 years; that there had been noises, odors and unclean conditions connected with the maintenance of the present comfort station; and that plaintiffs would be adversely affected by the new structure. The trial judge concluded as a matter of law that (1) the deed of dedication did not preclude the borough from erecting a comfort station on the dedicated beachfront, (2) that the public had acquired an easement in the portion of the dedicated beachfront here in question and that the borough had abandoned the area to public use for over 20 years, and (3) that the injury apprehended by plaintiffs entitled them to injunctive relief enjoining the construction of a comfort station in that area of the dedicated beachfront under consideration.
Defendants do not in their main brief raise the issue of time limitation under the cited rules and statute. The trial *156 court did not specifically deal with this issue. The provisions of R.R. 4:88-15(b)(4) and (11), which respectively state that no proceeding in lieu of prerogative writ shall be brought to review an ordinance for a municipal public improvement after 30 days from the adoption of the ordinance, or to review such an ordinance after the contract therefor shall have been awarded, obviously have no application. These limitations deal with proceedings in lieu of prerogative writ, and not proceedings for an injunction. R.S. 40:1-19 provides that after final passage a municipal bond ordinance shall again be published in full, together with a statement (the form is set out in the statute) that the 20-day period of limitation within which an action questioning the validity of such ordinance can be commenced has begun to run from the date of the first publication of the statement. This was done here, after the adoption of the ordinance authorizing the new comfort station and the issuance of bonds and bond anticipation notes to finance its cost, the first publication taking place March 19, 1954. The present action was instituted June 29, 1954. It is not necessary to deal with the opposing contentions of the parties as to the applicability or non-applicability of the statute, in view of our determination of the appeal on the merits. But compare, on this question, Watters v. Mayor, etc., of Bayonne, 89 N.J. Eq. 384 (Ch. 1918), dealing with L. 1916, c. 252, sec. 2, subsec. 3, as amended by L. 1917, c. 240, sec. 2  legislation substantially similar to R.S. 40:1-19.
Plaintiffs maintain that they will suffer irreparable damage from the erection of a new comfort station west of the boardwalk. Their apprehension stems from their experience with the present structure east of the boardwalk, their testimony in this regard being summarized above. The trial court found as a fact that:
"The damage apprehended by the plaintiffs has been established and proved by the evidence involving the present comfort station; and the Court finds that the plaintiffs are not required to endure a situation such as that which has in the past existed, and that, therefore, equitable relief in the form of an injunction is available to them in this case."
*157 The court also found (as previously stated) that there had been noises, odors and unclean conditions at times in the past, and that the proposed comfort station, located at a point closer to plaintiffs' home, "will almost certainly hinder the plaintiffs adversely in the use of their property, and there is more than a mere apprehension of irreparable damages."
The testimony as to conditions in the past has already been characterized by us as not being of strong quality. The present comfort station was erected in 1930, and since that date it is significant that plaintiffs never complained to the borough council about it or how it was operated.
The law is settled that in order for plaintiffs to succeed in their injunction action it must clearly be proved that a comfort station cannot be so conducted as not to become a nuisance. A comfort station is not a nuisance per se, which term is defined as "an act, occupation or structure which is a nuisance at all times and under all circumstances, regardless of location or surroundings." Black's Law Dictionary (4th ed. 1951). In fact, R.S. 40:48-4 expressly authorizes municipalities to erect comfort stations. Plaintiffs anticipate they may be damaged by the erection of the new comfort station, and this on the basis of rather thin proof (their own) as to conditions in the past. This does not constitute adequate evidence upon which to predicate a judgment that an entirely new and modern station cannot be operated other than as a nuisance.
An injunction should not issue on the basis of mere apprehension. Plaintiffs have no standing in this court until such time as the new comfort station is erected and proved to be a nuisance. The language of the court in Lou Menges Organization, Inc., v. North Jersey Quarry Co., 3 N.J. Super. 494, 499 (Ch. Div. 1949), is appropriate. The plaintiffs in that case, apprehensive of prospective consequential injury, sought to enjoin defendant from again resuming operations of its stone quarry with new equipment and using modern methods. The court said:
"In prosecution of the present action, the plaintiffs look mournfully upon certain events of the past of which they have heard, *158 and they desire me to infer that such occurrences will necessarily come back again. In its most persuasive attire, such an inferential conclusion portentous of an instinctive future resumption by the company of the same old practices and methods, cannot be adopted without great risk of injudicious, if not demonstrable, error. Trial and error is not a wise practice in the dispensation of injunctions."
In Ronan v. Barr, 82 N.J. Eq. 563, 568-569 (Ch. 1913), complainants sought to restrain the erection of a public garage as a nuisance. The court there held:
"* * * The business is a lawful one, and the presumption is that it will be lawfully carried on. In such circumstances a court of equity will not interfere. If in the prosecution of the business a nuisance is created it may interpose. This court refused to restrain as a nuisance the erection of a blacksmith shop, Butler v. Rogers, 9 N.J. Eq. (1 Stock.) 487; a factory for manufacturing agricultural implements, Wolcott v. Melick, 11 N.J. Eq. (3 Stock.) 204; a pottery, Ross v. Butler, 19 N.J. Eq. (4 C.E. Gr.) 294; a gas works, Cleveland v. Citizens Gas Light Co., 20 N.J. Eq. (5 C.E. Gr.) 201; a slaughter-house, Attorney-General v. Steward & Taylor, 20 N.J. Eq. (5 C.E. Gr.) 415; a saw-mill, Duncan v. Hayes & Greenwood, 22 N.J. Eq. (7 C.E. Gr.) 25; a pest-house, State [ex rel] Board of Health v. [Inhabitants of City of] Trenton, [N.J. Ch.] 63 A. 897. Each of these cases exhibits a situation of impending harm of far greater magnitude than that shown here, and in all of them the court refused to interfere with the building, although in some instances it enjoined a particular method of carrying on the business which threatened or proved to be injurious to others, and in this respect a nuisance. * * * equity will not interfere by injunction to restrain the erection of a building unless the building is so intimately and essentially a part of an unlawful business as to make it apparent that the combination of building and business spells nuisance. As was said in Cleveland v. Citizens Gas Light Company, supra, when it is not made to appear that the business for which the building is intended cannot possibly be carried on without becoming a nuisance, this court will deny the injunction. * * *"
See, also, Vaszil v. Molnar, 133 N.J. Eq. 577 (Ch. 1943); Oechsle v. Ruhl, 140 N.J. Eq. 355 (Ch. 1947); 6 McQuillin, Municipal Corporations (3d ed. 1949), § 24.61, pp. 576ff.
We conclude, therefore, that there was no proper foundation for the trial court's granting of an injunction on the basis of an anticipated nuisance.
*159 We turn, now, to the conclusion reached below that "the public has acquired an easement in that portion of the dedicated beachfront which would constitute the projection of Brielle Road from the westerly monumented beachfront line at the easterly end of Brielle Road, to the westerly line of the boardwalk, which portion has been abandoned by the Borough of Manasquan to the public as a street for upwards of 20 years." This was error. The public cannot, by prescription, user, or otherwise, acquire an easement for street purposes in a beachfront that has been dedicated to the public as "a place of resort for public health and recreation."
It is firmly embedded in our law that the doctrine of adverse possession does not run against the State or its subdivisions. George Van Tassel's, etc., Inc., v. Town of Bloomfield, 8 N.J. Super. 524, 532 (Ch. Div. 1950), citing Price v. Inhabitants of City of Plainfield, 40 N.J.L. 608 (E. & A. 1878); City of Long Branch v. Toovey, 104 N.J.L. 335 (E. & A. 1927); Osterweil v. City of Newark, 116 N.J.L. 227 (E. & A. 1935). And see Dvorin v. City of Bayonne, 111 N.J. Eq. 52 (Ch. 1932); Lower Township v. Reeves, 14 N.J. Super. 180 (Ch. Div. 1951); 1 Thompson on Real Property (perm. ed. 1939), § 414, p. 677; 10 McQuillin, Municipal Corporations (3d ed. 1950), § 28.55, p. 142 and 1954 Cum. Supp., p. 31; 16 Am. Jur., Dedication, § 45, p. 394. And the public right of dominion over a property dedicated to the public use may lie dormant for years without extinguishment. George Van Tassel's, etc., Inc., v. Town of Bloomfield, above, 8 N.J. Super., at page 532; Osterweil v. Newark, above, 116 N.J.L., at page 233. Admittedly the Van Tassel and other cases are not factually similar to the instant one, but the rule they espouse is clearly applicable. Were we to hold with the trial court that an easement was acquired in the present case, we would have the anomalous situation of the public holding adversely as to itself.
There is a further reason why the claimed easement for street purposes could not be acquired in the beachfront. A permissive use cannot ripen into a prescriptive use. In Plaza v. Flak, 7 N.J. 215, 220 (1951), the Supreme Court *160 held that a user must be "adverse, hostile, continuous, uninterrupted, visible and notorious." To be hostile, the user must be such as to show an intent to claim as against the true owner, in this case the public itself. Proof of such an intention cannot be inferred. See Predham v. Holfester, 32 N.J. Super. 419 (App. Div. 1954).
There was no abandonment of the dedicated beachfront to street purposes or any other purpose in this case. The general rule is stated in 11 McQuillin, Municipal Corporations (3d ed. 1950), § 33.78, pp. 784ff.:
"An abandonment does not result from mere nonuser, after dedication is complete unless a statute so provides, or from misuser, or delay in its improvement and use, or by a mere temporary abandonment of such use. To constitute abandonment some affirmative act is essential. Lands once completely dedicated in due form continue for that use until the title is divested as provided by statute or until the execution of the use becomes impossible. No mere lapse of time or adverse possession will destroy it.
* * * And a municipality may relinquish its control over property dedicated to it for public use by an abandonment thereof, and this is so notwithstanding prescription does not run against a municipality as to land granted to it for the use of the public."
In this case there is an absence of any affirmative act on the part of the defendant municipality which could be considered as constituting an abandonment. The fact that the municipality may have acquiesced in the use of the area for the movement and parking of cars, and as a means of ingress to and egress from the beach  and here we ignore for the moment defendants' proofs to the contrary  does not spell out abandonment. And there would appear to be no evidence of any municipal action, whether by way of ordinance or other proceedings, extending Brielle Road easterly beyond the westerly line of the dedicated beachfront. The borough is merely a trustee of the public in and to the beachfront, and cannot be deprived thereof, nor divest itself of its rights therein, except by appropriate action of its governing body, founded on legislative authority therefor. Dvorin v. City of Bayonne, above, 111 N.J. Eq., at page 57.
*161 Plaintiffs urge that an ordinance adopted in 1927, providing for the laying out and opening of a 60-foot street "between high and low water mark, along and upon the Beachfront" within the limits of the borough is proof of abandonment. As to this, only two brief observations are necessary. In the first place, definite location of the street with reference to the area here in question is impossible. Secondly, the adoption of the ordinance appears to represent the full extent of municipal action with respect to such a street. Whatever might have been the intention behind the ordinance, it has remained a nullity; there can be no question but that the strip which was dedicated for a place of resort for public health and recreation, has always been operated by the borough as a beachfront from the day of dedication forward.
It may be observed that the dedicated beachfront is akin to lands dedicated for a park. A park has been defined as a place for the resort of the public for recreation, air and light. Price v. Inhabitants of City of Plainfield, above, 40 N.J.L., at page 613, and see Baird v. Board, etc., of South Orange, 108 N.J. Eq. 91, 99-100 (Ch. 1931), reversed for other reasons 110 N.J. Eq. 603 (E. & A. 1932), for similar definitions. If the dedicated lands here be considered in the nature of park lands, then we may look to cases which have held that the running of public streets through park lands is prohibited. See Seward v. City of Orange, 59 N.J.L. 331 (Sup. Ct. 1896); 39 Am. Jur., Parks, Squares and Playgrounds, § 25, p. 821; Annotation, 18 A.L.R. 1248.
Plaintiffs do not challenge the legal conclusion reached by the trial court that the deed of dedication did not preclude the borough from erecting comfort stations on the dedicated beachfront, although they had argued below that a comfort station was not a structure permitted under the limitation of the deed  in other words, that it was not an open summer house or pavilion. We may observe, however, that a comfort station is clearly a necessary adjunct to a boardwalk. On a beachfront where thousands of people, *162 old and young, assemble for recreation, walk the boardwalk, and bathe from the beach, comfort stations are a very real necessity if the health, welfare and safety of the public are to be protected and preserved, and a serious sanitation and health problem prevented.
There is the further consideration that the construction of a comfort station is a proper exercise of the police power of a municipality, one of whose primary duties is to protect the health and safety of its people. Not only does R.S. 40:48-4 specifically authorize a municipality to provide and maintain comfort stations, but that power is obviously comprehended within the broad terms of R.S. 40:48-2. In any consideration of powers legislatively granted to municipalities we must, of course, always have in mind the provision of the 1947 Constitution, Art. IV, sec. VII, par. 11, that laws concerning municipal corporations shall be liberally construed in their favor. It cannot be said that the terms of the deed of dedication were meant to prohibit the erection of structures so obviously necessary to the health, safety and convenience of the public which was to use the beachfront.
The possession and enjoyment of private rights are subject to the reasonable exercise of municipal police power essential to the safety, health, peace, good order and morals of the community. The fact that plaintiffs may be esthetically or otherwise incidentally inconvenienced by the construction of the new comfort station cannot stand in the way of the contemplated municipal action, there being no showing that what the borough intends to do here is in any way arbitrary or unreasonable.
In view of our determination on the merits, we do not pass upon another argument projected by defendants  that plaintiffs, not being abutting property owners on that portion of the beachfront where the comfort station is to be erected, have no status to invoke injunctive relief. In this regard, it may be appropriate to consult Poulos v. Dover Boiler & Plate Fabricators, 5 N.J. 580, 586-587 (1950); Warren Foundry & Pipe Corp. v. Meridan Stone Co., 32 N.J. Super. 254, 256-257 (App. Div. 1954); Francisco v. Dept. of Institutions *163 and Agencies, 13 N.J. Misc. 663, 180 A. 843 (Ch. 1935), where the pertinent cases are reviewed.
The judgment is reversed.