MARY BENTON et al., complainants-respondents, cross-appellants,

*v.*

ELIZABETH G. KERNAN et al., defendants-appellants, cross-respondents.

[Argued October 31st, 1940.   Decided September 18th, 1941.]

*Messrs. Milton, McNulty & Augelli* and *Mr. Joseph Keane,* for the defendants-appellants Elizabeth G. Kernan, individually and as executrix, Louis Kernan and Kern-O-Mix, Inc.

*Mr. Stanley L. Gedney, Jr.,* and *Mr. Miles M. Messinger, Jr.,* for the defendants-appellants Mary Kernan and Savings Investment and Trust Co., trustees.

*Mr. Israel B. Greene,* for the complainants-respondents.

The opinion of the court was delivered by

DONGES, J.

This is an appeal from a decree of the Court of Chancery imposing certain restraints upon the defendants in the operation of their stone quarry in the neighborhood of complainants' homes in South Orange. Preliminary restraint was

granted (*125 N. J. Eq. 412*) and was modified by this court
(*126 N. J. Eq. 343*). After final hearing the decree now
under review was advised.

The evidence is reviewed in detail in the opinion of the
Vice-Chancellor, *127 N. J. Eq. 434,* and need not be repeated
at length here. The general situation presented is that this
quarry, established some thirty-three years ago and in prac-
tically continuous operation since, uses dynamite or other
explosive in the reduction of the natural rock and the blasts
vibrate the homes of the residents in the vicinity and, it is
claimed, cause physical damage thereto. Respondents com-
plain that the operation, both by the blasting and the crushing
of the rock, causes annoyance and disturbance to the residents
in the vicinity; that, since the fall of 1935, the operation of
a plant for the mixture of paving material, known as Kern-
O-Mix, installed at that time, has produced noxious and
offensive gases and odors and caused vibration of respondents'
homes, and caused them annoyance and disturbed enjoyment
of their homes.

Respondents also sought restraint of the operation by
appellant of trucks on the public highway passing their
homes. This relief was denied as well as the allowance of
counsel fees, from which refusal complainants appeal.

The decree restrains blastings that jar, vibrate or shake
respondents' buildings; cause stones to be thrown on their
premises; or cause such noise as will occasion a nuisance,
disturbance or annoyance to respondents or their families;
operating machinery with such noise as to occasion nuisance,
disturbance or annoyance to the parties; dropping crushed
rock into bins, trucks or hoppers of the crusher so as to
occasion nuisance, disturbance or annoyance; operating a
steam whistle (which seems to have been discontinued);
operating the Kern-O-Mix to permit offensive odors, vapors
or gases to be emitted from the plant, or from the trucks
conveying this product past the homes so as to be a nuisance,
disturbance or annoyance, and from doing anything that may
render the air unwholesome, unsanitary or uncomfortable;
and from operating the Kern-O-Mix plant with such noise
and vibration as to occasion a nuisance, disturbance or annoy-

ance; and from carrying on the Kern-O-Mix manufacture and sale on the quarry grounds and requiring the moving of that plant; and giving time to make changes in the quarry machinery and equipment to eliminate the noises complained of.

We consider first that portion of the decree which contains restraints against blasting. We think it clear that respondents are entitled to restraint against blasting which causes such severe jarring, vibration and shaking of the respondents' homes as to cause physical damage thereto, such as is testified to have occurred in this case, and against blasting that causes stones to be thrown on their premises. But we are of the opinion that an injunction against all jarring, vibration and shaking of respondents' homes goes beyond the relief to which they are entitled. In the case of *Hennessy* v. *Carmony, 50 N. J. Eq. 616,* relied upon in the court below, the vibration which was enjoined was severe enough to "cause walls to crack" as well as to cause other annoyance, and we find that case no authority for an injunction against vibration of insufficient severity to cause physical injury.

In *Wallace & Tiernan Co., Inc.,* v. *U. S. Cutlery Co., 97 N. J. Eq. 408; affirmed, 98 N. J. Eq. 699,* an injunction was granted against the vibration of complainant's factory building by machinery in the factory of the defendant. The situation there was that the complainant, in the operation of its factory, used delicately adjusted appliances and was seriously hampered in the use of these appliances by the vibration and thereby was deprived of the full enjoyment and use of its property that it had before the defendant installed the machinery which caused the vibration. That case is not analogous to the one under review.

A number of cases are cited from other jurisdictions wherein injunctions against blasting by quarries that caused vibration of complainants' properties was sustained, namely, *Blackford* v. *Heman Co. (Mo.), 112 S. W. Rep. 287; Barret* v. *Vreeland (Ky.), 182 S. W. Rep. 605; Fagan* v. *Silver (Mont.), 188 Pac. Rep. 900; Lademan* v. *Lamb Construction Co. (Mo.), 297 S. W. Rep. 184,* and *Rogers* v. *Gibson (Ky.), 101 S. W. Rep. (2d) 200.* In only one of these cases, how-

ever, was a distinction sought to be made between vibration or jarring that would cause physical damage and less severe vibration. In *Blackford* v. *Heman Construction Co., supra,* the defendants complained of this rigid restraint, contending it would prevent all operation of the quarry. The appellate court said: "The argument must be examined with respect to the facts in proof. * * * By reference to the facts upon which the decree is given, it appears the vibrations from unusual explosions caused plastering to fall from plaintiff's ceiling, bricks to work loose and fall from the cornice of his house, and the mortar to crumble from between the bricks in the walls. *It therefore appears the vibrations contemplated by the decree entailed a substantial injury to the plaintiff's property."* So, it would seem in that case, the appellate court's construction limited the injunction to one against blasting that caused physical damage. We think that in the case under consideration the injunction against blasting should enjoin only such blasting that so shakes and vibrates complainants' properties as to cause physical damage thereto and causes stones to be thrown on the properties.

As stated, the decree also granted an injunction against operating the rock crusher, steam engine, drills and other machinery, with such noise as to "occasion a nuisance, disturbance, or annoyance to any of the complainants and their families in the enjoyment of their respective houses and grounds upon which they stand;" also from dropping crushed rock from bins into trucks, loading trucks, and dropping rock into the hopper of the crusher, with such noise as to occasion a nuisance, disturbance or annoyance to the complainants.

Complaint is made that this restraint is too indefinite, and much may be said in support of that contention since the restraint depends upon the degree of noise that would annoy the complainants and the members of their families, a group numbering more than one hundred persons, presumably of varying sensibilities. However, our determination of this phase of the case need not rest upon this ground.

There have been a number of cases in this jurisdiction where injunctions against noise have been allowed. In *Seligman* v. *Victor Talking Machine Co., 71 N. J. Eq. 697;*

*affirmed, 72 N. J. Eq. 946,* an injunction was sustained prohibiting noises from a factory during the night, the finding being that the noise prevented the complainant from enjoying his sleep and rest. There was no restraint against the noise during the daytime. In *Abend* v. *Royal Laundry Service, Inc,. 122 N. J. Eq. 77,* an injunction was sustained against the operating of a laundry during the hours from seven o'clock in the evening and six-thirty in the morning, on the ground that the noise disturbed complainant's sleep.

The principles governing cases of this character are laid down in the decisions. "To enjoin the prosecution of a perfectly legal business on account of the noise made in conducting it, the evidence should be clear and convincing." *Hey* v. *Seifert & Baime, Inc., 95 N. J. Eq. 502.* "If the legal right is not clear, or the injury is doubtful, eventual or contingent, equity will give no aid." *Demarest* v. *Hardham, 34 N. J. Eq. 469.* "There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction." *Citizens Coach Co.* v. *Camden Horse Railroad Co., 29 N. J. Eq. 299.*

An apt statement of the law as applied to nuisances arising from noise is that contained in *Tortorella* v. *H. Traiser & Co. (Mass.), 188 N. E. Rep. 254,* where it was said: "A noise may constitute an actionable nuisance * * * but it must be a noise which affects injuriously the health or comfort of ordinary people in the vicinity to an unreasonable extent. Injury to a particular person in a peculiar position or of specially sensitive characteristics will not render the noise an actionable nuisance. * * * In the conditions of present living noise seems inseparable from the conduct of many necessary occupations. Its presence is a nuisance in the popular sense in which that word is used, but in the absence of statute noise becomes actionable only when it passes the limits of reasonable adjustment to the conditions of the locality and of the needs of the maker to the needs of the listener. What those limits are cannot be fixed by any definite measure of quantity or quality. They depend upon the circumstances of the particular case."

In the light of these principles we have examined carefully the evidence on the subject of noise resulting from the operation of the quarry machinery. There is no evidence from which it can be found that the health of any of the complainants has been affected by this noise. The question then is, has their comfort been affected to an *unreasonable* extent? While we do not hold that the fact that the quarry was in existence long before complainants moved into the locality is conclusive, it is an element to be considered in determining the reasonableness of the disturbance to them. Most of the complainants moved to the neighborhood within four or five years prior to the filing of the bill, and the quarry had been in continuous operation for over thirty years. It was less active during the years of the depression than it has been lately, although its most active years were from 1925 to 1929. At any rate, persons moving into the vicinity of a quarry in operation had less reason to expect perfect quiet than persons in the country or a residential area remote from industrial activity would naturally expect.

An examination of the complainants' evidence discloses that some of the complaint concerning noise had to do with the noise of the blastings. Much of the complaint is of noise resulting from the driving of trucks along the streets in the neighborhood, on the way to and from the quarry. The Vice-Chancellor declined to restrain the operation of the trucks. Some of the noise complained of is caused by the operation of the Kern-O-Mix plant, about which more will be said later.

Some twenty-one residents of the neighborhood testified on behalf of the complainants. They testified to varying degrees of annoyance suffered by reason of the noise of the machinery. A few complained bitterly and a few made no mention of this type of noise. One, Irene Caverly, said "We have been bothered considerably by the trucks, by the blasting, by the noise of this machinery * * * the blasting and the trucks have been our greatest annoyance over the period of years we have lived there." Another, Susie·D. Rogers, said "The noise is very wearing, very disagreeable." Mrs. Graham testified that in the summer, when she was out of doors, she heard the machinery, and that once, when her husband was ill, he

was annoyed by the continuous noise. Ida Walowit could hear the noise and was "very much annoyed" by it. Helen Mercy testified "we are constantly annoyed by it [the noise] in the summer time."

Five residents in the community, some of them living nearer the quarry than most of the complainants and one of whom lives in the house which is nearest the quarry, testified that they suffered no annoyance from the operations. Many other families are resident in the neighborhood, who have not appeared to testify.

Without referring specifically to the evidence in detail at great length, our reading of it leads us to the conclusion that the annoyance complained of resulting from noise is as much attributable to the trucks and the Kern-O-Mix as it is to the operations of the quarry itself. Under all the circumstances of the case, having in mind the operation of the quarry over a period of many years and the hours during which the quarry is worked, from eight o'clock in the morning until 4:30 in the afternoon, so that no question of interfering with sleep and rest during the ordinary sleeping hours is concerned, we conclude that the complainants have not established with the degree of certainty necessary in this class of cases that their health or comfort has been injuriously affected to an unreasonable degree by the sounds emanating from the quarry machinery. We think it cannot be said that this noise goes beyond the limits of reasonable adjustment to the conditions of a locality where there has been a quarry for years, and reasonable adjustment of the needs of the maker to the needs of the listeners. This restraint will be stricken from the decree.

As to the noise resulting from the blasting, this is but momentary following the explosions. The explosions do not occur with great frequency, *Exhibit C-21,* a record kept by the complainant Given, indicating that during the month of July, 1939, there were fourteen blasts, and during August, twenty-three blasts. Under the circumstances, the annoyance from this noise is something the complainants must bear. We cannot say that it injuriously affects their health or comfort to an unreasonable degree. This restraint likewise will be stricken from the decree.

As to the operation of the Kern-O-Mix plant, we think that the evidence justifies the restraint granted. Mr. Justice Trenchard, speaking for this court, in *Melucci* v. *Eagan, 124 N. J. Eq. 241,* said: "Now the rule is well established that filling the air around a dwelling with noxious or offensive vapors or odors, with accompanying noises, to such a degree as renders persons of ordinary sensitiveness living in the house uncomfortable and sick, is a nuisance and unlawful injury which will be restrained by injunction." The evidence in this case brings it within that rule. The proof is that there permeates the neighborhood, especially when the wind blows from the direction of the plant, "a vile smell as though someone was burning tarry oily rags;" that it was particularly bad on sultry summer days; that a number of persons resident in the neighborhood had suffered spells of nausea resulting from the odor; that a sleeping porch which the Greenes were accustomed to use in hot weather became uninhabitable, necessitating the moving of the furniture to a room on the opposite side of the house.

The annoyance resulting from gases and odors is not confined to the hours when the plant is actually in use. The testimony is that the odors emanate from the Kern-O-Mix at any and all hours, during the night as well as the day, and interfere with the sleep of the complainants.

With respect to this plant the position of the complainants is not the same as it is with respect to the operation of the quarry generally. The Kern-O-Mix has been operated only since 1935, and recently with increasing intensity. Complainants were not upon notice to expect annoyance from a source such as this, whereas the existence and continued operation of the quarry necessarily would give rise to an expectation of noises that result from such an establishment. We think the record supports a finding that this plant injuriously affects the health and comfort of the complainants to an unreasonable degree, in the circumstances. This portion of the decree will be affirmed.

Complainants, in their cross-appeal, contend that it was error for the court below to deny an injunction against the operation of trucks past their houses by the defendants, on

the way to and from the quarry. No case is cited where the operation of trucks along public streets has been enjoined. Concentration of motor vehicles for purposes of loading and unloading, supplying gasoline and oil, &c., has been considered an element of nuisance, along with other matters, in cases cited from other jurisdictions wherein various businesses have been enjoined as nuisances in particular neighborhoods, but they are no authority for what the complainants ask in this case. The decree in this regard is affirmed.

Nor do we consider that there was any error in denying complainants a counsel fee. This rests in the discretion of the Vice-Chancellor and no abuse of that discretion appears.

There remains to be considered the separate appeal of the defendants Mary Kernan and Savings Investment and Trust Company, trustees under the last will of Richard L. Kernan, deceased. The trustees own the property as tenants in common with Elizabeth G. Kernan. They have leased their interest to Elizabeth G. Kernan, who operates the quarry. The rent is based upon royalties on all stone quarried. We think the record indicates a leasing for the particular purpose for which the premises are used, and it is not a case of a general letting followed by the operation of a business wholly of the lessee's choosing. In this situation, the decree properly runs against the owners who have leased their interest, as well as against the operators of the quarry. *Melucci* v. *Eagan, supra.*

The cause will be remanded to the Court of Chancery for modification of the decree in accordance with this opinion. No costs to either party in this court.

*For affirmance*—CASE, J.   1.

*For modification*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, HAGUE, JJ.   12.