Rearward of the dwelling of the complainants in the Borough of Carteret, the defendants have erected on their own property a structure which the complainants suspect, and justifiably so, is presently to be inhabited by hens and presumably one or more companionable roosters. The complainants remonstrate. Endeavors to persuade the municipal authorities to interpose have been unavailing. Hence, an immediate exercise of the injunctive power of this court is implored.
It is acknowledged that the structure itself, although obviously designed to shelter domestic fowl, is not objectionable. *Page 578 
Indeed, a view of it and its occupants from the complainants' premises is obstructed by a fence. The distress which the complainants anticipate, it is said will be occasioned by the discordant sounds and the noxious odors emanating (in expectancy) from the hennery.
It will be presupposed that the roosters will strut, wax indignant and crow. Yet, they too have moments of grave serenity. The hens will perambulate, scratch and cackle. Nevertheless, I decline to adjudge that the keeping of chickens is in all circumstances a nuisance per se.
Sound is of course a general term; noise imports a confused or discordant sound. Sounds which are ignored by some are discomforting to others. Shakespeare, as I recall, portrayed the rooster as the "trumpet of the morn." It is conceivable that the brook babbling in its passage might be vexatious to one of exceptional neurotic sensitivity. Then, there are those who regard all noises as objectionable except those they make themselves.
Broadly stated, the noises which this court normally enjoins are those which affect injuriously the health or comfort of ordinary people in the vicinity to an unreasonable extent; noises which are caused to recur at the wrong time or at the wrong place. Thus, the character, volume, frequency, duration, time and locality are relevant factors in determining whether the annoyance materially interferes with the ordinary comfort of human existence. Benton v. Kernan, 130 N.J. Eq. 193;21 Atl. Rep. 2d 755.
The raising and maintenance of chickens ought not to be unjustifiably discouraged. Indeed, a chicken in every pot has been the auspicious promise of rulers and political parties ever since the sixteenth century. Who is disposed to forego the breakfast egg or a dinner of fried chicken? Perhaps at some future time, the science of breeding will produce the silent rooster and the quiet hen in company with the voiceless cat, the odorless pig and the flealess dog. Meanwhile, chickens will continue to be chickens, and if in the present cause it eventuates that the maintenance of poultry at the location selected is pursued in such conditions and circumstances as to injuriously affect the comfort of residents of *Page 579 
ordinary sensitiveness in the vicinity, this court will not hesitate to enjoin its continuance. Sic utere tuo ut alienum nonlaedas.
In considering the present application, the significant point is that the chickens have not yet moved in. There are at present no pervading fowl odors. The characteristics of the apprehended annoyance are not yet evident and as previously stated, I cannot presuppose that the prospective acts of the defendants will inevitably result in a nuisance. The nuisance here alleged is eventual or contingent.
Where the interposition by injunction is sought to restrain a course of action which it is apprehended will create and result in a nuisance, the proofs must disclose that the apprehension is well grounded; that the danger is real and immediate and the injury will be material. Newark Aqueduct Board v. Passaic,45 N.J. Eq. 393, 402; 18 Atl. Rep. 106; Hemsley v. Bew, 53 N.J. Eq. 241; 31 Atl. Rep. 210; Kerr on Injunctions (6th ed.) 139,140, ch. VI § 1.
An injunction in limine will be denied which will not deprive the court of ability to afford the complainants relief if further proofs of the actual conditions verify the injury now apprehended.