[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 496 
In the year 1895 the defendant originated on a tract of land of approximately 206 acres the enterprise of crushing and processing stone at its Millington Quarry, in Bernards Township, Somerset County. The operations continued regularly until 1936 when primary blasting was discontinued, and in 1942 the activities at the site were further diminished. During this latter period of reduced operations at the quarry, the plaintiffs acquired their residential properties. The estate of the plaintiff Lou Menges Organization, *Page 497 
Inc., lies on the easterly side of the defendant's lands, intercepted in part by the Delaware, Lackawanna and Western Railroad Company's right of way over which the Passaic and Delaware branch of the railroad is maintained. The Schulte messuage is situate on the opposite side of South Maple Avenue, a public street that borders partly on the easterly side of the defendant's acreage.
The defendant has recently acknowledged its intention to obtain and install new equipment and promptly to renew operations at the quarry in accordance with modern methods. The plaintiffs, apprehensive of prospective consequential injury, resolved to institute and indeed to prosecute this action for injunctive relief prior to the actual inauguration of the contemplated operations of the defendant. They take cognizance of Shakespeare's remark "Better three hours too soon, than one minute too late."
I take the succinct statement of the basic issue from the pre-trial order. It is: "Whether contemplated operations of the quarry by the defendant, including the blasting and crushing of stone, will inevitably constitute a nuisance to the injury of the plaintiffs."
A more specific declaration of the anticipated annoyances which alarm the plaintiffs is contained as follows in paragraph 7 of their complaint.
"7. Plaintiffs and their families, guests and servants will, if defendant commences quarry operations, be subjected to excessive noises, vibrations, dust and noxious odors; be deprived of peace, quiet and enjoyment; suffer discomfort and impairment of health; be exposed to the hazards of falling stone and rock; be denied the full use of their lands and the adjoining public roads during blasting operations; their properties will be liable to physical injury by jarring and concussion from explosions and by falling stone and rock; and the properties of the plaintiffs, Lou Menges Organization, Inc. and Milton R. Schulte and Florence B. Schulte, will be greatly depreciated in value."
Initially it must be conceded that injunctive relief may be sought to restrain an undertaking which it is reasonably apprehended will create and result in a nuisance. In such cases the burden of proof is normally a weighty one unless the expectant objectionable act will of itself and in all *Page 498 
circumstances be a nuisance per se. The proof, the degree of which I shall presently mention, must disclose that the apprehension is well grounded, that the danger is real and immediate, and that the injury will be material. Newark AqueductBoard v. Passaic, 45 N.J. Eq. 393, 402, 18 A. 106; Hemsleyv. Bew, 53 N.J. Eq. 241, 31 A. 210; Vaszil v. Molnar,133 N.J. Eq. 577, 33 A.2d 743.
Then, next, it is to be admitted that the conduct of a stone quarry is not per se an unlawful enterprise. Its offensiveness to others depends upon the characteristics of its operations. Here we have a case in which eventualities are substituted for actualities and in which it is alleged that injurious eventualities sufficient in character to constitute a nuisance are unavoidable and indubious.
To establish a cause of action of such a nature it is at once rational to realize that the probative quality of the evidence must rise above the altitudes of speculative conjecture and uncertainty.
In the more usual class of these cases where the evidence is revelational of actual occurrences, the essential elements of the alleged nuisance must be sustained by proof that is clear, convincing, and free from reasonable doubt. "It must be clear that the nuisance will exist in the one instance just as it must be clear that it does exist in the other." Sayre v. City ofNewark, 58 N.J. Eq. 136, 42 A. 1068. To doubt the justification is to deny the injunctive relief. Hence the degree of proof becomes a particularly prominent factor in the judicial consideration of an alleged nuisance in expectancy. Especially so, here, where it is charged that the business intended to be carried on by the defendant cannot be pursued in any manner without becoming a nuisance to the personal and property rights of the plaintiffs.
Recent adjudications of instructive pertinency and replete with citations are: Benton v. Kernan, 127 N.J. Eq. 434,13 A.2d 825 (Ch.); decree modified, 130 N.J. Eq. 193, 21 A.2d 755;Kosich v. Poultrymen's Service Corp., 136 N.J. Eq. 571,43 A.2d 15; Oechsle v. Ruhl, 140 N.J. Eq. 355,54 A.2d 462. *Page 499 
The plaintiffs are fearful of expectable noises. Assuredly noises will not cause impairment of health of the plaintiff corporation. Noises which the court normally enjoins for the protection of persons are those which affect injuriously the health or comfort of ordinary people in the vicinity to an unreasonable degree. Accordingly the character, volume, time, frequency, and duration of the noises are fundamental factors in determining whether the annoyance although in some degree existent or reasonably to be anticipated, is or will be such as materially to interfere with the ordinary comfort of human existence in the locality.
The plaintiffs are also apprehensive of vibrations. In the absence of extraordinary circumstances, this court does not ordinarily restrain vibrations unless they are sufficiently severe in force to cause or in reasonable probability likely to cause discomfort to an unreasonable extent, or some material physical damage to property.
The plaintiffs also foresee a permeation of the air in their vicinity with an offensive volume of dust and the distracting and alarming experience of falling fragments of rock upon their properties.
In prosecution of the present action, the plaintiffs look mournfully upon certain events of the past of which they have heard, and they desire me to infer that such occurrences will necessarily come back again. In its most persuasive attire, such an inferential conclusion portentous of an instinctive future resumption by the company of the same old practices and methods, cannot be adopted without great risk of injudicious, if not demonstrable, error. Trial and error is not a wise practice in the dispensation of injunctions.
The past sins of the defendant (and its predecessor) to which my attention is attracted are relatively remote in time. It is emphasized that some forty years ago a former owner of the Menges property obtained a preliminary injunction against the operations of the quarry as then conducted. There is evidence that during a period extending from thirteen to twenty years ago certain features of the business were disturbing and vexatious to some residents of the neighborhood. *Page 500 
Modern industry in America does not live by habit. Nevertheless in the instant case I am importuned to embroider elaborately the substratum of the past occurrences.
But on behalf of the defendant I am assured that it intends to use and employ "all of the approved modern techniques, including split second delay firing, supervision by experts in blasting techniques, proper location of drilled holes, which holes will be drilled to appropriate and proper depths under expert guidance, that there will also be expert guidance in the type and load of powder, the extent of the burden, the use of all approved safety methods recommended in blasting operations and the use of generally approved and accepted practices in open pit operations," and that "modern dust arrestation methods and dust collecting equipment will be installed."
Supplementing those assurances, there is opinion evidence that if such a course of procedure is pursued by the defendant the operations of the quarry will not be in any substantial or material degree offensive to the plaintiffs or injurious to the use and enjoyment of their respective properties. There is nothing more venturesome than to attempt to predetermine the "ifs" of future human actions. Collectively considered, the forecasts of the geologists, engineers, and other experts conduct me to divergent and oppugnant expectations.
Thus I remain in a state of mind in which in recognition of the evidence and the nature of the enterprise as also revealed by common knowledge and experience, I might presuppose that the proposed resumption of the business will cause some noises, some vibrations, some dust, but I cannot with any measure of confidence and reasonable certitude premeditate the characteristics of any one of those contingent eventualities. Now to adjudicate that those consequences or some of them will indubitably exist to a manifestly unreasonable and offensive degree is merely to exercise the processes of imagination. Causavaga et incerta non est causa rationabilis.
Few things in life are entirely good or entirely bad. What should be the injunctive terms of a present judgment for the plaintiffs? They suggest an answer to that inquiry *Page 501 
in the prayer of their complaint in which they demand that the defendant, its agents, servants, employees, and all persons acting in concert or combination with it be restrained from operating the quarry business or any branch thereof at the Millington property. That, in the existing posture of the evidence, I cannot at present justifiably do. The present Chancery Division in emulation of the traditional Court of Chancery must continue to be a workshop of justice. Indeed, such a brimming measure of prohibition as here requested was not achieved in Benton v. Kernan, supra, in which the evidence imparted knowledge of real operations and actual consequences.
It is perhaps unnecessary but precautions to remark that the alertness of the plaintiffs ought not to be ignored in any further litigation that may hereafter arise out of a realistic development of the general subject matter of this action. The defendant has received a warning.
The judgment herein must go in favor of the defendant.