37 N.J. Super. 62 (1955)
116 A.2d 809
STANLEY H. LIEBERMAN AND NAOMI LIEBERMAN, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
THE TOWNSHIP OF SADDLE RIVER, A MUNICIPAL CORPORATION; THE BOARD OF EDUCATION OF THE TOWNSHIP OF SADDLE RIVER, AND SADDLE RIVER TOWNSHIP LITTLE LEAGUE ASSOCIATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 7, 1955.
Decided September 28, 1955.
*63 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Robert M. Kronman argued the cause for appellants.
Mr. Morris Malech argued the cause for respondents (Mr. Guy W. Calissi, attorney for the Township of Saddle River and Saddle River Township Little League Association; Mr. Maurice D. Emont, attorney for the Board of Education of the Township of Saddle River; Mr. Joseph M. Lynch on the brief).
The opinion of the court was delivered by JAYNE, J.A.D.
Numerous indeed are the authorities which have consistently characterized the judicial injunctive power as an extraordinary equitable remedy to be exercised only with considerable caution, broad circumspection, and sound discretion.
In the present case the judge of the Chancery Division in his purpose to administer equity and justice doubtless *64 scrutinized the factual circumstances from the sociological as well as the juristic points of view. Courts in the progressive construction of our decisional law cannot be insensible to the social pulsations of an ever-changing civilization and inattentive to the necessary modifications and adjustments of private demands to the exigencies of the public welfare.
The plaintiff prosecuted this action to compel the Saddle River Little League Association to abandon its baseball field and to remove therefrom the bleachers, grandstand, backstop, and all other "enclosures and structures" that had been erected thereon for the entertainment and enjoyment of the youth of the township.
It is within the orbit of common knowledge that in the rising tide of crime a wave of juvenile delinquency has become alarmingly conspicuous. The most praiseworthy and benevolent endeavors have been initiated to ascertain the major causative reasons for the origin and existence of these unnatural propensities among our youths and to resolve efficient means to obstruct and, if possible, suppress the growth of the evil tendency. Governmental bodies, civic and fraternal organizations, and a host of interested persons throughout the nation are cooperating to accomplish that laudable object.
It is demonstrable that mischief is a normal product of an idle, emotional, and confused state of mind, hence inter alia, the establishment of suitably equipped playgrounds, football and baseball fields for the use of youngsters, and the organization of leagues comprised of competitive teams of youthful members are movements that have universally appealed to the wisdom and generosity of the adult public as an attractive and effective means of engaging our juveniles during the periods of their impatient leisure and discontent.
The adult inhabitants of the Township of Saddle River and the municipal officials were typically responsive. In 1953 a local Little League baseball association was organized to be conducted without pecuniary profit, and the township committee and board of education in September of that *65 year granted to the association a gratuitous tenancy at will of an area of vacant land owned in contiguous portions by the two municipal bodies and situate at Saddle River Road and Cambridge Avenue, to be developed and used by the Little League as a baseball field.
Thereafter the ground area, some parts of which were overgrown marsh lands, was filled and graded; a baseball diamond laid out and constructed; a backstop, players' dugouts, open bleachers or seating stands, and a surrounding fence were progressively erected. It is interesting to know that about 100 truck loads of dirt fill and $600 worth of top soil were required suitably to prepare the surface of the field. The preparation of the ground area began in October 1953; the backstop was erected in January 1954, the dugouts in February, the stands in March. The monetary cost of approximately $2,000 was donated by the inhabitants of the township. The construction work was performed during weekends by volunteers. All of this was accomplished before the eyes of the plaintiffs. Cf. O'Connell v. Holton, 91 N.J. Eq. 4 (Ch. 1919).
The field was opened for use on May 2, 1954. After the completion of the field and its use began, the plaintiffs instituted this action on July 1, 1954 to enjoin the occupancy of the field for games of baseball and to require the demolition or removal of the existing structures already erected on the site.
In 1950 the plaintiffs established their residence in the six-room one-family house on the westerly side of Saddle River Road on a plot of ground having a frontage of approximately 110 feet and a depth of 135 feet. The immediately surrounding lands are vacant. The house is situate on the southerly portion about 57 feet back from the front line of the plot, leaving a northerly area of about 50 feet in width of unoccupied land, then an adjacent space to the north of 50 feet dedicated as a public street and designated as Colonial Avenue, but not yet improved. Some 30 feet farther to the northeast is the nearest border of the ball park. The occupants of the house are the plaintiffs, *66 their four-year-old son, and their daughter of the age of eight years. Mr. Lieberman is 37 years of age.
The photographic exhibits portray the characteristics of the plaintiffs' property and those of the ball park. It is informative to explain that the open grandstand for the use of spectators accommodates only 120 persons. The participants in the games consist of the two teams of not exceeding 15 eligible players on each, two managers each, and two umpires. There are in all eight major Little League teams. The field has no artificial illumination. No games are played on Sundays. No catering concessions within the grounds are accorded. Little League games on Mondays through Saturdays are scheduled to start at 6:15 P.M. and if not earlier completed must terminate at 8:30 P.M. Some additional baseball games may be played on the field on Saturdays. The attendance at the games fluctuates according to the popularity of the teams from 50 to 100 spectators comprised principally of the parents of league players and of other interested children. No admission charge is exacted. Order is safeguarded by a member or members of the police reserve. The safety of the children is covered by insurance. The association supplies the uniforms and other baseball equipment to the teams. The games are conducted only during the recognized baseball season and assuredly not played in inclement weather. Sufficient has been disclosed to indicate the relatively small but serviceable dimensions of this wholesome project.
The plaintiffs allege that the former quiescent tranquility of the vicinity is interrupted, and Mr. Lieberman particularly complains that his accustomed comfort and complacency are prejudicially agitated during the early evening by the use of the ball field. He is an electronics engineer. While he is at his office elsewhere during the day, he asserts that his "business is of such a nature that it is necessary for me to bring home some work to do of a mathematical nature." He testified that the noise from the baseball field distracts him. He and his wife also relate that their four-year-old *67 son is deterred or awakened from his sleep by the noise of the other children.
From the scanty evidence anent the personal predispositions of Mr. Lieberman, it may be reasonably inferred that he is not a baseball enthusiast. He has never taken his children to witness any of the games. The television broadcasts of professional baseball games do not allure him.
Among the mentioned annoyances was the circumstance that at times as many as 25 automobiles were parked outside the fence of the field across the road in some proximity to the plaintiffs' property. Noises were occasioned, said the plaintiffs, by the closing of the car doors upon the arrival and subsequent departure of the occupants. In dry weather dust is caused to arise from the passage of the vehicles. It is observed that the judgment rendered herein requires the defendants "to desist and refrain from using or permitting to be used that part of the area immediately adjacent to the plaintiffs' property known as Lots 1, 2 and 3 in Block 1598 * * * for the parking of cars." The defendants do not challenge that restraint in the present appellate review of the case.
Other personal annoyances to which the plaintiffs object are the natural and customary emanations of a baseball game, such as the applause which is emotionally aroused by a skillful fielding play or a Ruthian home run.
The noise made by happy and delighted children at play is amiable to the adult ears of some, and nothing less than irritatingly discordant din to the ears of others. Broadly stated, the noises which a court of equity normally enjoins are those which affect injuriously the health or comfort of ordinary people in the vicinity to an unreasonable extent; noises which are caused to recur at the wrong time or at the wrong place. Thus, the character, volume, frequency, duration, time, and locality are relevant factors in determining whether the annoyance materially interferes with the ordinary comfort of human existence. Benton v. Kernan, 130 N.J. Eq. 193 (E. & A. 1941); Vaszil v. Molnar, 133 N.J. Eq. 577 (Ch. 1943). Those factors, *68 however, are elements of a factual essence to be resolved from the credibly established circumstances of the particular case.
Certainly the mere maintenance of a Little League baseball field for the enjoyment of juvenile players is not a nuisance per se. 39 Am. Jur. 351, § 72. The trial judge resolved that the plaintiffs had failed clearly and convincingly to prove that the alleged annoyances are so material and substantial in character, and that the noises are so excessive, so unreasonable in volume, frequency, and duration, as to require the extaordinary relief prayed for by the plaintiffs. Our examination of the record does not incline us to overthrow that conclusion.
Two additional reasons augment the request of the plaintiffs for injunctive relief. While we deem them to be without substantiality, we shall briefly allude to them. The one is that the plaintiffs' residential property and the baseball park are situate within a district in which the zoning ordinance prohibits the pursuit of "trades" and "industries." We do not conceive that the conduct of the games by the Little League in the circumstances was the indulgence in either a trade or an industry within the intended import of the ordinance. Confirmation in that conviction finds expression in the fact that on June 13, 1955 the township committee adopted an amendment to the zoning ordinance specifically excluding "public parks, playgrounds, play areas and ball fields maintained by the Township * * * or by any duly organized or incorporated club not operated for profit * * *" from the inhibitive provisions of the ordinance.
The other and concluding reason in its figurative aspect resembles a caudal appendage to the body of plaintiffs' case. Cf. McCullough v. Hartpence, 141 N.J. Eq. 499 (Ch. 1948). It has been previously mentioned that north of the plaintiffs' property an abutting strip of vacant land of 50 feet in width had been once dedicated by the owner to the public for use as a street and given the name Colonial Avenue. Whether the dedication has ever been officially *69 accepted by the municipal authorities is not disclosed by the evidence. It is acknowledged that in the locality with which we are here concerned the strip has not been physically transformed into a conventional public highway.
The plaintiffs insist that as abutting owners their title extends to the middle of the dedicated street subject only to the public easement. Vide, Wolff v. Veterans of Foreign Wars, &c., 5 N.J. 143 (1950). Mr. Lieberman testified that at some most proximate point to the north of his asserted property line he discovered by pacing the distance that the fenced enclosures of the ball field encroached possibly as much as four feet upon his half of the proposed street. No actual survey or exact measurement was made.
Aside from the purely legalistic considerations, it is not even intimated in what respect this alleged slight encroachment upon the unimproved street, if any, in itself diminishes at all or in any appreciable degree the full and complete possession and enjoyment of the plaintiffs' property. The plaintiffs suffer therefrom no peculiar injury. The trial judge was not persuaded by the meager relative evidence that any encroachment in fact existed. Manifestly it is the congregation of the children and the noise exported by the games that the plaintiffs seek to banish from their vicinity.
Today it is realized that we not only have modern conveniences but also modern inconveniences.
In the circumstances of the present case the judgment is affirmed.