**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0808-18T2

RICHARD GIANACAKOS,
STEPHANIE GIANACAKOS,
and SCOTT FREEMAN,

      Plaintiffs-Respondents,

v.

HUDSON RIVER CROSSFIT,
MR. JOHN FRANKLIN, and
MS. ETHEL KOSZEGHY,

      Defendants-Appellants.

_____

      Submitted December 5, 2019 – Decided April 1, 2020

      Before Judges Nugent and Suter.

      On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000127-17.

      Dunne Dunne & Cohen LLC, attorneys for appellants (Frederick Richard Dunne, III, of counsel and on the brief).

Baldassare & Mara, LLC, attorneys for respondents (Michael Angelo Baldassare, on the brief).

PER CURIAM

Following a bench trial, defendants Hudson River CrossFit (CrossFit), John Franklin and Ethel Koszeghy appeal the October 11, 2018 order requiring CrossFit to cease operations at 701 Clinton Street in Hoboken; restraining Koszeghy from re-renting this premises as a cross-fit gym or from installing or using a public music system in it, and awarding $100,000 in punitive damages against CrossFit and Franklin individually, jointly and severally—although this award was stayed as long as certain conditions were satisfied. Plaintiffs Richard and Stephanie Gianacakos and Scott Freeman were denied compensatory damages. We affirm the order without the punitive damages award and the "self-executing" portion of the conditional stay, both of which we reverse.

I.

In August 2017, plaintiffs filed a complaint against defendants alleging causes of action to restrain violation of the Hoboken noise ordinance (Chapter 133 of the City of Hoboken Code) (count one); to restrain continuation of a private nuisance (count two); and for damages caused by a private nuisance tort and by a breach of contract (counts three and four). In addition to seeking compensatory damages, plaintiffs requested punitive damages for the private

nuisance tort and attorney's fees for all counts. Defendants denied the allegations.[1] Franklin and CrossFit filed a counterclaim against Richard Gianacakos for tortious interference with prospective economic advantage.

### A.

We glean the facts from the bench trial. The building at 701 Clinton Street (701) is owned by defendant Koszeghy. Made of concrete, it was constructed as a garage, but was renovated for use as a commercial business. In 2013, Koszeghy leased the premises to defendant Hudson River Fitness, LLC. Franklin signed the lease and signed a personal guaranty. Hudson River Fitness, LLC operated as CrossFit.

Plaintiffs own residences immediately next door to CrossFit at 703 Clinton Street (703). The Gianacakoses live in the lower two floors; Freeman in the upper floors. Both the Gianacakoses and Freeman purchased their properties in April 2016. Shortly after moving into 703—which had been newly constructed—plaintiffs "noticed the excessively loud music and the dropping of weights that emanated from the neighboring gym."

---

[1] Defendants also filed a third-party complaint against Red Bridge Homes Corporation and RB3 Holdings Corp, the builders of 703 Clinton Street. These pleadings are not in the appendix.

A-0808-18T2

Stephanie Gianacakos testified she was awakened at 5:30 a.m. by vibrations and noise coming from CrossFit. She could hear people screaming obscenities and repetitive thuds caused by dropping dumbbells and throwing medicine balls against the wall. She testified the noise was so loud it interfered with her telephone conversations. The noise disturbed her sleep and was having a substantial impact on her life. She described this as "horrible" and a "nightmare." She was offended by the obscenities she could hear coming from CrossFit.

Richard Gianacakos (Gianacakos) testified the vibrations coursed through the walls and floor. He testified there was no place to get away from the sounds, which included music, profane language and dropping weights; he and his wife could not use certain rooms including the master bedroom.

Scott Freeman—who owned the upper floors of the building—testified the vibrations from CrossFit were, "awful," and that enduring them was "a nightmare." The vibrations occurred every ten to fifteen seconds and were similar to "small explosions . . . . [C]aus[ing] the entire building to shake." He testified the vibrations made his pots and pans rattle in the kitchen. The vibrations negatively affected his life because they woke him early in the morning and he could not use his premises for work-related or social gatherings.

A-0808-18T2

Gianacakos complained to CrossFit's owner, Franklin, and Freeman wrote to Koszeghy complaining about the noise, all to no avail.

Gianacakos filed a municipal court complaint to enforce the noise ordinance that he claimed was violated. Following mediation, CrossFit, Franklin and Gianacakos reached an agreement in May 2017. Under the agreement, CrossFit and Franklin agreed to "keep noise and vibration down to a reasonable minimum pursuant to the relevant statutes."[2] Gianacakos testified CrossFit and Franklin violated the agreement.

Gianacakos maintained a log from October 2017 to August 27, 2018, that documented the noises he heard inside his home from CrossFit's operation, including the sound of weights dropping to the floor, things hitting the wall, loud music, women screaming and profanities. He purchased sound meters to measure the noise level within his premises.

Jay Wein, the general manager of CrossFit, testified about various weight lifts used in cross-fit training. He testified recent changes were made to the staff manual to reduce the music, but the music was monitored by the individual

---

[2] The mediated agreement is not in the appendix. No one disputed this was the language in the agreement.

coaches during the workouts.  (Wein acknowledged CrossFit's new equipment pads "kind of mitigate[ed] the noise."

Franklin is the owner of CrossFit.  He testified about the efforts made to mitigate sounds and vibrations by using pads when weights were dropped, reducing the amount of music speakers, and by moving the remaining music speaker.  He acknowledged he had not visited plaintiffs' homes nor responded to their letters to him.

Koszeghy testified she owned 701, leasing it in 2013 to CrossFit.  She was not aware Franklin signed an agreement with plaintiffs to abate noise and impact sounds.  She did not contact Freeman after he wrote to her about the noise in May 2017.  The lease with CrossFit prohibited it from conducting a public nuisance at the property.  She renewed the lease with CrossFit in April 2018.[3]

Paul Montgomery testified as an expert sound engineer.  He measured sound and impact noises within the Gianacakos home.  He testified that on November 13, 2017, between 5:41 a.m. to 6:12 a.m., there were nineteen separate times when the impact noise exceeded the Hoboken ordinance.  He measured the sound from music which was double the level set by the Hoboken

---

[3] The lease is not in the appendix.  No one disputed this was the date of renewal in the lease.

ordinance. The decibel levels were about the same in the evening around 5:30 p.m. On November 20, 2017, the readings were similar. The impact noise exceeded the forty-decibel limit eleven times before 6:59 a.m.; the music readings were nearly double the six-decibel limit. On November 21, 2017, the impact noise exceeded the Hoboken noise ordinance thirty-seven times starting at 5:30 a.m. He also measured music levels more than double the noise ordinance.

Joel Mestre was employed by the City of Hoboken as the Deputy Coordinator of the Office of Emergency Management. He testified he was aware there had been "multiple" complaints about noise at CrossFit. He did not go into plaintiffs' homes. He walked outside of the building at 703. He could not hear the music or weights with the doors and windows closed.

Peter Svoboda testified for defendants as a forensic construction engineer. He opined that 703 was not constructed properly because it was interconnected to 701 in a number of different places. He testified he heard music and impact sounds from within CrossFit, but did not hear them inside the Gianacakos's residence.

David Phelan testified for defendants as an expert in construction, construction code, and fire evacuation systems. He testified he did not perform

7

any sound testing inside the plaintiffs' homes nor was he qualified to evaluate or enforce noise ordinances. He testified the music and impact sounds were transmitting through the building materials of the wall between the two premises. In his opinion, there should not have been a physical connection between the two buildings.

B.

Following the trial on October 11, 2018, the trial court ordered defendants to cease operations at 701. Koszeghy was restrained from re-renting the premises to any tenant who would operate a gym using cross-fit modalities, including weightlifting or any apparatus attached to the walls. The order barred the installation or use of a public music system at 701. Plaintiffs' request for compensatory damages was denied because they had not proven monetary damages. However, the trial court ordered $100,000 in punitive damages against CrossFit and Franklin. The trial court stayed the restraints to cease operations and the punitive damages judgment if all weightlifting ceased at 701. The court ordered that activities at CrossFit could be monitored by plaintiffs, but if the music or vibration levels were measured to exceed the Hoboken Municipal Code, the trial court's order was "self-executing" meaning CrossFit would have to immediately close at 701, and the punitive damages award would

8

be reduced to a judgment against Franklin individually and CrossFit, jointly and severally.

The trial court found plaintiffs and their witnesses were "far away more credible" than the defense witnesses. It determined plaintiffs proved by clear and convincing evidence that defendants "created and maintained both a continuing acts and past acts [private] nuisance." The court found the music noise and impact noise constituted an actionable private nuisance. The noise unreasonably interfered with the use and enjoyment of the premises, interrupting work and leisure. It found Franklin was "immediately" informed about the noise, and efforts were made to remediate this, but the noise continued with his knowledge. The court found the equities favored plaintiffs because the benefit of the gym to Franklin was "purely economic" while it interfered with the plaintiffs' ability to occupy and enjoy their homes.

The court determined Franklin breached the mediation agreement. Noise levels were not kept within the levels set by the ordinance.

The trial court also found plaintiffs were "interested" parties under N.J.S.A. 40:55D-18, allowing them to enforce the Hoboken municipal sound ordinance. Montgomery's testimony provided adequate proof the sound levels

A-0808-18T2

within plaintiffs' residences from CrossFit exceeded the Hoboken noise ordinance.

The trial court found Koszeghy was liable. She was aware of the noise complaints based on Freeman's letter to her. In the lease, Koszeghy was obligated not to permit her tenant to engage in any activities that were a public nuisance. The court found she did not make any inquiry after Freeman's letter.[4]

The trial court assessed $100,000 in punitive damages against CrossFit and Franklin, individually, under N.J.S.A. 2A:15-5.12(a). It found the "conditions that were created resulted exclusively from the activities engaged in by the athletes and staff of [CrossFit] with the full understanding and knowledge of its owner Mr. Franklin." The court found his actions "were, nevertheless, taken with a willful and wanton disregard by means of a deliberate act or omission which created a knowledge of a high degree of probability of harm to Mr. and Mrs. Gianacakos and Mr. Freeman, and also with reckless indifference to the consequences of that act or omission." The court determined punitive

---

[4] The court determined the third-party defendants, who were the original owners, contractors and sellers of 703, were liable to defendants because there was adequate credible evidence based on Phelan's testimony that the "noise and vibrations that emanated from the gym were due in part to the construction of the building by a preponderance of the evidence."

A-0808-18T2

damages were needed to punish and deter future actions. The court found Franklin "immediately violated" the mediation agreement and only paid "[l]ip service" to compliance requirements. The conditions at plaintiffs' residences continued unabated. The court concluded Franklin's motivation was solely based on economics. The trial court denied attorney's fees to all parties because there was no fee shifting statute or rule that applied. The trial court denied defendants' motion to stay the October 11, 2018 order.

C.

On appeal, defendants allege the trial court erred by permitting 116 videos into evidence, which they claim plaintiffs intentionally withheld in discovery and were not properly authenticated. Defendants argue the trial court abused its discretion because its October 11, 2018 order was against the weight of the evidence. Defendants argue the remedies imposed by the trial court were overly broad. They contended the trial court's order, in effect, closed CrossFit's business at this location. Defendants argue the punitive damage award against Franklin individually was unfounded. The order was overbroad because it prohibited Koszeghy from re-renting the premises to any other business using a public music system.

A-0808-18T2

## II.

## A.

Defendants contend the trial court abused its discretion by permitting 116 videos from CrossFit's Instagram account in evidence because these were provided to defendants just a few days before trial and were not properly authenticated.  Defendants contend they were prejudiced, and that plaintiffs did not show exceptional circumstances under Rule 4:24-1(c).

"In reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion."  Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008).  The general rule as to the admission or exclusion of evidence is that "[c]onsiderable latitude is afforded a trial court in determining whether to admit evidence, and that determination will be reversed only if it constitutes an abuse of discretion."  State v. Feaster, 156 N.J. 1, 82 (1998).  An appellate court should not substitute its judgment for that of the trial court, unless "the trial court's ruling 'was so wide of the mark that a manifest denial of justice resulted.'"  State v. Marrero, 148 N.J. 469, 484 (1997) (quoting State v. Kelly, 97 N.J. 178, 216 (1984)).

Richard Gianacakos' testimony was sufficient to authenticate the videos for the limited purposes for which they were introduced.  See Suanez v. Egeland,

330 N.J. Super. 190, 195 (App. Div. 2000) (providing "authentication must establish that the video tape is an accurate reproduction of that which it purports to demonstrate."). Plaintiff had been inside CrossFit on prior occasions. Wein was present in some of the videos and CrossFit's logo can be seen.

We are satisfied the trial court did not abuse its discretion by admitting the videotapes. They were created by defendants and posted on their own social media account, remaining there until just prior to trial. The trial court limited use of the videotapes "to illustrate the various exercises that were described, and the equipment used . . . and the existence of the purported remedial measures." These same topics also were addressed by Wein and Franklin in their testimony. The videotapes were not used by the court as proof of the noise levels produced by CrossFit. Even if it were error to admit the videotapes, the error was not reversable because the videotapes were simply cumulative of Franklin and Wein's testimony.

### B.

We afford a deferential standard of review to the factual findings of the trial court on appeal from a bench trial. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). These findings will not be disturbed unless they are "so manifestly unsupported by or inconsistent with the

competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Id. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, our review of a trial court's legal determinations is plenary. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Defendants contend the City of Hoboken was actively enforcing its noise ordinance because at the same time this civil case was pending, defendants were defending a municipal court action based on plaintiffs' complaints. Because of this, defendants argue plaintiffs were not "interested" parties under N.J.S.A. 40:55D-18 to enforce the zoning ordinance. Defendants argue there was no zoning violation because they were zoned to operate a gym at this location.

Under N.J.S.A. 40:55D-18 "an interested party . . . may institute any appropriate action or proceedings to . . . restrain, correct or abate [violation of a municipal ordinance]." An "[i]nterested party" is defined as "any person, . . . whose right to use, acquire, or enjoy property is or may be affected by . . . an action or a failure to act under [this Act]." N.J.S.A. 40:55D-4.

The trial court found plaintiffs' right to the use and enjoyment of their property was negatively affected by CrossFit's operations. There is nothing in

14

N.J.S.A. 40:55D-18 that provides plaintiffs are precluded from instituting an action because there also is a municipal court complaint about the same conduct nor have defendants cited authority to support this argument.

Defendants argue the trial court erred by finding defendants liable for a private nuisance. They argue there was testimony about their efforts to address plaintiffs' complaints. These included equipment modifications, modifications in the manner that members drop weights, and changes to the CrossFit program itself. Defendants argue plaintiffs did not prove that defendants' conduct was intentional. They contend CrossFit was operating at 701 for three years before 703 was constructed. They argue plaintiffs were aware of CrossFit prior to purchasing their homes.

"The essence of a private nuisance is an unreasonable interference with the use and enjoyment of land." Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448 (1959). In evaluating whether there is a private nuisance, a trial court must weigh "[t]he utility of the defendant's conduct . . . against the quantum of harm to the plaintiff" in order to determine "whether the annoyance or disturbance arises from an unreasonable use of the neighbor's land or operation of his business." Id. at 449. A private nuisance does not require proof of negligence. Smith v. Jersey Cent. Power & Light Co., 421 N.J. Super. 374,

390-91 (App. Div. 2011). Noise may constitute a nuisance where it presents "(1) injury to the health or comfort of ordinary people to an unreasonable extent, and (2) unreasonableness under all the circumstances, particularly after balancing the needs of the maker to the needs of the listeners." Traetto v. Palazzo, 436 N.J. Super. 6, 12 (App. Div. 2014) (quoting Malhame v. Borough of Demarest, 162 N.J. Super. 248, 261 (Law Div. 1978)). The evidence must be clear and convincing. Benton v. Kernan, 130 N.J. Eq. 193, 198 (E. & A. 1941).

Our thorough review of the record shows there was sufficient credible evidence to support the finding by the trial court that the operation of CrossFit created a private nuisance. There was proof the noise and vibration produced significantly exceeded the municipal ordinance requirements within plaintiffs' premises. The sound readings were taken early in the morning and late at night. Plaintiffs testified there were rooms they could not use during certain parts of the day. The sounds interfered with their sleep; there was no place to avoid the sounds. Although there certainly is a utility to a gym in terms of adding to the physical and mental fitness of its members, we cannot say the trial court erred by determining the utility of those benefits did not outweigh the impact on plaintiffs through the loss of enjoyment and use of their property on a daily basis. The nature of the activities at 701 made it difficult for defendants to

16

modify the activity to reduce the disturbance which remained unabated even up to the day of the trial.

CrossFit was liable because it operated the gym. Franklin was sued individually. The trial court found—and there was evidence to support—that he did not adhere to his agreement to keep noise at reasonable levels. Koszeghy owned the building where CrossFit operated. She was aware of the noise based on correspondence from Freeman, did not take action to abate it and re-leased the property to CrossFit. As a landowner, she can be liable for a nuisance. <u>See</u> <u>Cogsville v. City of Trenton</u>, 159 N.J. Super. 71, 73-74 (App. Div. 1978) (providing a landlord ordinarily will not have liability for a nuisance on a leased premises, unless the landlord "knew, or had reason to believe, that he was letting the property for a use which must prove injurious to the plaintiff" (quoting <u>Wasilewski v. McGuire Art Shop</u>, 117 N.J.L. 264, 267 (Sup. Ct. 1936))). Thus, the trial court had ample evidence and legal support for its order finding liability by defendants for a private nuisance.

C.

Defendants argue the trial court committed reversible error by finding they breached the mediation agreement. They contend they acted in good faith

17

and followed the agreement by "keep[ing] noise and vibration down to a reasonable minimum, pursuant to the relevant statute."

The record does not support defendants' contentions. The trial court found plaintiffs and their witnesses to be credible. The testimony by the Gianacakoses and Freeman was that the loud noise—starting early in the morning—continued to significantly interfere with the use and enjoyment of their homes. The agreement was to reduce the noise to reasonable levels. The court found that was not achieved. Thus, the trial court did not err by finding Franklin and CrossFit breached the mediation agreement.

D.

Defendants argue the trial court abused its discretion because its order effectively shut down their business at this location. Although CrossFit has relocated its business, defendants contend they continue to pay rent for this premises.

Where a nuisance has been found, the court can order the activity to cease. See Kernan, 130 N.J. Eq. at 193. Here, the trial court stayed its order to cease operations as long as the gym operated without dropping weights, throwing medicine balls against the wall or playing loud music. The gym was not closed

down. Its operation was conditioned on not conducting certain types of activities.

We disagree with the trial court that the order to cease operations and to enter a punitive damages judgment could be self-executing based upon monitoring activities by plaintiffs. This portion of the order was an inappropriate delegation by the trial court of its powers. See Parish v. Parish, 412 N.J. Super. 39, 53 (App. Div. 2010) (providing that "[e]nforcement of orders rests with the courts"). The court cannot delegate to plaintiffs the ability to trigger the automatic entry or modification of an order. It is for the trial court to determine, based on appropriate notice and opportunity to respond, whether an order has been violated or whether there is a need to modify its terms. The trial court erred in delegating this authority to plaintiffs.

E.

We agree with defendants that the punitive damages award must be reversed. Under N.J.S.A. 2A:15-5.13(c) "[p]unitive damages may be awarded only if compensatory damages have been awarded in the first stage of the trial." See Longo v. Pleasure Prods., 215 N.J. 48, 58 (2013). The trial court did not award compensatory damages. Therefore, there was no authority to award punitive damages.

Defendants argue the trial court committed reversible error by restraining the ability to re-rent 701 if it has a public music system. We disagree. Defendants presented no information about music levels that were reasonable for this structure nor did the order preclude defendants from making application for a modification in the future. On this record, the trial court did not commit reversible error.

Affirmed in part; and reversed in part. The punitive damages award is reversed. The portion of the order that is self-executing is reversed. The conditions of the stay are affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0808-18T2